Filed 6/25/15 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RACHEL VERDUGO,<br><br>  Plaintiff and Appellant,<br><br>    v.<br><br>ALLIANTGROUP, L.P.,<br><br>  Defendant and Respondent. | G049139<br><br>(Super. Ct. No. 30-2013-00643612)<br><br>ORDER (1) MODIFYING OPINION AND (2) DENYING REHEARING; NO CHANGE IN JUDGMENT |

On the court's own motion, it is ordered the opinion filed in the above-entitled matter on May 28, 2015, is hereby MODIFIED as follows:

1.      On page 3, the first sentence of the first full paragraph, starting with "The few cases Alliantgroup cites," insert the words "Labor Code" between the words "in the context of a" and "wage and hour dispute," so the sentence reads as follows:

> The few cases Alliantgroup cites do not address how a Texas court will view a choice-of-law clause in the context of a Labor Code wage and hour dispute between a Texas employer and a California employee, and Alliantgroup fails to address the competing policies of these two states.

2.      On page 3, the second sentence of the first full paragraph, starting with "Alliantgroup could have eliminated any doubt," delete the words "failed to" and replace them with the words "it did not," so the sentence reads as follows:

> Alliantgroup could have eliminated any doubt about which law would apply to Verdugo's claims by stipulating to have the Texas courts apply California law, but it did not do so.

3.      On page 3, the third sentence of the first full paragraph, starting with "Instead, Alliantgroup carefully phrased," delete the entire sentence and replace it with the following:

> Instead, Alliantgroup acknowledged Texas might apply California law while simultaneously minimizing the significance of the California statutory rights on which Verdugo bases her claims.

4.      On page 20, the first sentence of the first full paragraph, starting with "Alliantgroup could have eliminated," delete the words "failed to" and replace them with the words "did not," so the sentence reads as follows:

> Alliantgroup could have eliminated any uncertainty on which law a Texas court would apply by stipulating to have a Texas court apply California law in deciding Verdugo's claims, but Alliantgroup did not do so.

5.      On page 20, the second sentence of the first full paragraph, starting with "Instead, Alliantgroup has carefully preserved," delete the words "carefully" and "seeking to," and replace the word "downplay" with "downplaying," so the sentence reads as follows:

> Instead, Alliantgroup preserved its ability to argue to a Texas court that it should apply Texas law, and Alliantgroup has hinted at its intention to do so by downplaying the significance of the statutory rights Verdugo seeks to enforce through this action.

6. On page 23, at the end of the partial paragraph at the top of the page, add the following new footnote number 9:

[9] Alliantgroup also relies on *Farmers Insurance Exchange v. Leonard* (Tex.Ct.App. 2003) 125 S.W.3d 55, and *Caton v. Leach Corp.* (5th Cir. 1990) 896 F.2d 939. These cases do not apply here because they do not involve the recovery of wages and other remedies under the Labor Code, and therefore do not involve the same underlying policies at issue in this case. Moreover, the *Farmers Insurance Exchange* case conducted a different analysis because the parties did not agree to a choice-of-law provision.

7. On page 25, renumber footnote no. 9 as footnote no. 10.

These modifications do not change the judgment.

The petition for rehearing filed by defendant and respondent Alliantgroup L.P. is DENIED. Alliantgroup requests rehearing to allow the parties to address whether Alliantgroup would stipulate to have a Texas court apply California law when deciding plaintiff and appellant Rachel Verdugo's claims. The earlier order for supplemental briefing provided Alliantgroup that opportunity, and therefore rehearing is not required.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.

3

Filed 5/28/15 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RACHEL VERDUGO,<br><br>  Plaintiff and Appellant,<br><br>      v.<br><br>ALLIANTGROUP, L.P.,<br><br>  Defendant and Respondent. | G049139<br><br>(Super. Ct. No. 30-2013-00643612)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Gail Andrea Andler, Judge.  Reversed.

Law Office of James M. Gilbert, James M. Gilbert; Law Offices of Darren D. Daniels and Darren D. Daniels for Plaintiff and Appellant.

Littler Mendelson, Julie A. Dunne and Khatereh S. Fahimi for Defendant and Respondent.

\*          \*          \*

Plaintiff and appellant Rachel Verdugo appeals from an order granting a motion to stay this wage and hour lawsuit based on a forum selection clause in her employment agreement with defendant and respondent Alliantgroup, L.P. (Alliantgroup). The clause designates Harris County, Texas, as the exclusive forum for any dispute arising out of Verdugo's employment, and also includes a provision designating Texas law as governing all disputes. Verdugo contends the trial court erred because enforcing the forum selection clause and related choice-of-law clause violates California's public policy on employee compensation. We agree and reverse the trial court's order.

Although a party opposing enforcement of a forum selection clause ordinarily bears the burden to show enforcement would be unreasonable or unfair, the burden is reversed when the underlying claims are based on statutory rights the Legislature has declared to be unwaivable. In that instance, the party seeking to enforce the forum selection clause has the burden to show enforcement would not diminish unwaivable California statutory rights, otherwise a forum selection clause could be used to force a plaintiff to litigate in another forum that may not apply California law.

Here, Verdugo bases all her claims on Labor Code provisions that not only establish when and how employers must pay overtime and other forms of compensation, provide meal and rest breaks, and provide accurate wage statements to all California employees, but also establish specific remedies for an employer's violation of these provisions, including recovery of unpaid wages, interest, civil penalties, and attorney fees. To protect these important rights and remedies, the Labor Code declares they cannot be waived by agreement.

Alliantgroup failed to show enforcing the forum selection clause and related choice-of-law clause in Verdugo's employment agreement would not diminish her statutory rights by requiring her to litigate her claims in Texas under Texas law. Alliantgroup contends Verdugo's statutory rights would not be affected by enforcing the forum selection clause because a Texas court "most likely" would reject the parties'

2

choice-of-law clause and apply California law. Alliantgroup's supposition about what a Texas court is likely to do is not sufficient to meet its burden because Alliantgroup's arguments on appeal suggest it will argue against applying California law if this case is litigated in Texas, and Alliantgroup has not cited any authority that convinces us a Texas court necessarily will apply California law.

The few cases Alliantgroup cites do not address how a Texas court will view a choice-of-law clause in the context of a wage and hour dispute between a Texas employer and a California employee, and Alliantgroup fails to address the competing policies of these two states. Alliantgroup could have eliminated any doubt about which law would apply to Verdugo's claims by stipulating to have the Texas courts apply California law, but failed to do so. Instead, Alliantgroup carefully phrased its arguments in terms of vague possibilities while simultaneously seeking to minimize the significance of the California statutory rights on which Verdugo bases her claims. Alliantgroup therefore has not shown Verdugo's unwaivable statutory rights will not be diminished.

I

FACTS AND PROCEDURAL HISTORY

Alliantgroup provides specialty tax consulting services to businesses throughout the United States. Its corporate headquarters are located in Harris County, Texas, and it has regional offices in 11 states, including California. In October 2007, Alliantgroup hired Verdugo to work as an "Associate Director" at its Irvine office in California. Verdugo performed inside sales work and provided clerical support for the sales staff. She had only minimal contact with the corporate office in Texas.

When Alliantgroup hired her, Verdugo signed an "Employment Agreement" that included a combined forum selection and choice-of-law clause stating, "Choice of Law/Jurisdiction/Venue: This Agreement shall be governed in all respects, including, but not limited to, validity, interpretation, effect and performance by the laws

of the State of Texas.  The parties agree that proper subject matter and personal jurisdiction shall be had solely in [the] State of Texas.  The sole venue for disputes arising hereunder shall be in Harris County, Texas."  (Italics, underscoring, and bold typeface omitted.)

In April 2013, Verdugo brought a class action lawsuit alleging the following claims on behalf of all similarly situated past and present employees of Alliantgroup:  (1) unpaid overtime wages under Labor Code section 1194;[1] (2) failure to provide accurate itemized wage statements under section 226; (3) failure to provide meal breaks under section 226.7; (4) failure to pay all wages due at time of termination under section 203; (5) failure to pay commissions under sections 200 to 204; (6) failure to pay vacation pay under section 227.3; (7) unfair and unlawful business practices under Business and Professions Code section 17200 et seq.; and (8) civil penalties under the Labor Code Private Attorneys General Act of 2004 (§ 2698 et seq.; PAGA).

Alliantgroup moved to dismiss or stay the action based on the forum selection clause in the Employment Agreement.  The trial court granted the motion and stayed this action based on its finding the forum selection clause was enforceable. Verdugo timely appealed.

II

DISCUSSION

A.    *Governing Legal Principles on Forum Selection Clauses*

"California favors contractual forum selection clauses so long as they are entered into freely and voluntarily, and their enforcement would not be unreasonable. [Citation.]  This favorable treatment is attributed to our law's devotion to the concept of one's free right to contract, and flows from the important practical effect such contractual

_____

[1]    All statutory references are to the Labor Code unless otherwise stated.

4

rights have on commerce generally."  (*America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 11 (*America Online*).)  Indeed, "'[f]orum selection clauses are important in facilitating national and international commerce, and as a general rule should be welcomed.'  [Citation.]"  (*Id.* at p. 12, italics omitted.)

A mandatory forum selection clause such as the one included in Verdugo's Employment Agreement is generally given effect unless enforcement would be unreasonable or unfair.  (*Animal Film, LLC v. D.E.J. Productions, Inc.* (2011) 193 Cal.App.4th 466, 471 (*Animal Film*); *Berg v. MTC Electronics Technologies Co.* (1998) 61 Cal.App.4th 349, 358 (*Berg*).)  "'"Mere inconvenience or additional expense is not the test of unreasonableness . . ."'' for a mandatory forum selection clause. [Citation.]"  (*Berg*, at p. 359.)  A clause is reasonable if it has a logical connection with at least one of the parties or their transaction.[2]  (*America Online*, *supra*, 90 Cal.App.4th at p. 12; *CQL Original Products, Inc. v. National Hockey League Players' Assn.* (1995) 39 Cal.App.4th 1347, 1354 (*CQL Products*).)

Nonetheless, "California courts will refuse to defer to the selected forum if to do so would substantially diminish the rights of California residents in a way that violates our state's public policy."  (*America Online*, *supra*, 90 Cal.App.4th at p. 12; see *Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 200 (*Intershop Communications*) ["a forum selection clause will not be enforced if to do so would bring about a result contrary to the public policy of this state"]; *CQL Products*,

---

[2]     A forum selection clause is either mandatory or permissive.  A clause is mandatory if it requires the parties to litigate their disputes exclusively in the designated forum, and it is permissive if it merely requires the parties to submit to jurisdiction in the designated forum.  A permissive forum selection clause is subject to traditional forum non conveniens analysis to determine whether the designated forum is a suitable alternative forum and whether the balancing of various private and public interest factors favors retaining the action in California.  These traditional forum non conveniens factors are not considered when a mandatory forum selection clause exists.  (*Animal Film*, *supra*, 193 Cal.App.4th at pp. 471-474; *Berg*, *supra*, 61 Cal.App.4th at pp. 358-359.)

*supra*, 39 Cal.App.4th at p. 1354; *Hall v. Superior Court* (1983) 150 Cal.App.3d 411, 416-418 (*Hall*).)

The party opposing enforcement of a forum selection clause ordinarily "bears the 'substantial' burden of proving why it should *not* be enforced." (*Global Packaging, Inc. v. Superior Court* (2011) 196 Cal.App.4th 1623, 1633, original italics; *Intershop Communications*, *supra*, 104 Cal.App.4th at p. 198.) That burden, however, is reversed when the claims at issue are based on unwaivable rights created by California statutes. In that situation, the party seeking to enforce the forum selection clause bears the burden to show litigating the claims in the contractually-designated forum "will not diminish in any way the substantive rights afforded . . . under California law." (*Wimsatt v. Beverly Hills Weight etc. Internat., Inc.* (1995) 32 Cal.App.4th 1511, 1520-1524 (*Wimsatt*); see *America Online*, *supra*, 90 Cal.App.4th at pp. 10-11 [party seeking enforcement must "prove that enforcement of the forum selection clause would not result in a significant diminution of rights"].)

Although the parties both contend we should review the trial court's decision to enforce the Employment Agreement's forum selection clause under the substantial evidence standard, we conclude abuse of discretion is the governing standard of review. To support their contention, the parties cite *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666 (*Cal-State*), which applied the substantial evidence standard based on the following explanation: "[I]n a contractual forum non conveniens motion, the trial court must determine if there is sufficient evidence to satisfy the requirements for invalidating a binding contract. If the trial court finds there are facts present which satisfy these criteria, it *must* act in a particular way; there is no discretion involved. The reviewing court is thus involved in determining the quantum of evidence adduced, not the manner in which factors were applied." (*Id.* at p. 1681, original italics; see *CQL Products*, *supra*, 39 Cal.App.4th at p. 1354.)

The *Cal-State* decision represents the minority view and has been criticized as inconsistent with Supreme Court authority: "[G]iven existing guidance on this question from our Supreme Court, and the more consistent line of Court of Appeal decisions, which likewise apply the abuse of discretion standard, we disagree with *Cal-State'*s conclusion that the substantial evidence standard applies instead." (*America Online*, *supra*, 90 Cal.App.4th at p. 9; see *Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 496 ["we conclude that forum selection clauses are valid and may be given effect, *in the court's discretion* and in the absence of a showing that enforcement of such a clause would be unreasonable" (italics added)].) We join the majority of cases and apply the abuse of discretion standard of review. (See, e.g., *Trident Labs, Inc. v. Merrill Lynch Commercial Finance Corp.* (2011) 200 Cal.App.4th 147, 154 & fn. 3; *Schlessinger v. Holland America* (2004) 120 Cal.App.4th 552, 557; *Intershop Communications*, *supra*, 104 Cal.App.4th at pp. 198-199; *Bancomer, S.A. v. Superior Court* (1996) 44 Cal.App.4th 1450, 1457 & fn. 7.)

B.     *Alliantgroup Bore the Burden to Show Enforcing the Forum Selection Clause Would Not Significantly Diminish Verdugo's Unwaivable Statutory Rights*

Verdugo contends Alliantgroup bore the burden to show that litigating her claims in Texas would not diminish unwaivable rights the Labor Code confers on all California employees to timely receive their proper pay, meal and rest breaks, and wage statements. We agree.

In *Wimsatt*, this court first addressed which party bears the burden of proof on a motion to enforce a mandatory forum selection clause when the claims at issue are based on unwaivable statutory rights. The plaintiffs were franchisees who sued their franchisor under California's Franchise Investment Law (Corp. Code, § 31000 et seq.; Franchise Investment Law), which the Legislature enacted to protect California franchisees. (*Wimsatt*, *supra*, 32 Cal.App.4th at p. 1513.) The plaintiffs alleged the defendant violated the Franchise Investment Law by making numerous

7

misrepresentations to induce them to purchase a franchise. Based on a forum selection clause in the parties' franchise agreement, the trial court dismissed the plaintiffs' action. (*Wimsatt*, at pp. 1514-1516.) On appeal, a panel of this court acknowledged the party opposing enforcement of a mandatory forum selection clause ordinarily bears a heavy burden to show enforcement would be unreasonable or unjust, but we nonetheless concluded the burden must be reversed when unwaivable statutory rights are involved because a forum selection clause otherwise could be used to circumvent those unwaivable rights. (*Id*. at pp. 1519-1520.)

*Wimsatt* explained, "One of the most important protections California offers its franchisee citizens is an antiwaiver statute which voids any provision in a franchise agreement which waives any of the other protections afforded by the Franchise Investment Law. [Citation.] A forum selection clause, however, carries the potential to contravene this statute by placing litigation in a forum in which there is no guaranty that California's franchise laws will be applied to a franchisee's claims. . . . If a forum selection clause places in-state franchisees in an out-of-state forum which uses some balancing test (or equivalent) to determine that the law of the out-of-state forum should be used in place of California's, then a forum selection clause in a franchise agreement will have effectively circumvented California's antiwaiver statute. . . . [¶] . . . [¶] Given California's inability to guarantee application of its Franchise Investment Law in the contract forum, its courts must necessarily do the next best thing. In determining the 'validity and enforceability' of forum selection provisions in franchise agreements, its courts must put the burden on the franchisor to show that litigation in the contract forum will not diminish in any way the substantive rights afforded California franchisees under California law." (*Wimsatt*, *supra*, 32 Cal.App.4th at pp. 1520-1522, fn. omitted.)

In *America Online*, the Court of Appeal applied *Wimsatt*'s rationale for reversing the burden of proof to claims under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.; CLRA) because the CLRA included an antiwaiver provision.

8

There, the plaintiffs brought a class action alleging their Internet provider violated the CLRA by charging unlawful account fees.  The defendant moved to stay or dismiss the action based on a mandatory forum selection clause in the parties' contract, but the trial court denied the motion because the defendant failed to show enforcement would not diminish the plaintiffs' rights under the CLRA.  (*America Online*, *supra*, 90 Cal.App.4th at pp. 4-7.)  The Court of Appeal affirmed because "the CLRA claim pleaded by [the plaintiffs], like the [Franchise Investment Law] claims asserted in *Wimsatt*, mandate[d] departure from the general rule which normally places the burden of proving unfairness or unreasonableness of the forum selection clause on the party opposed to its enforcement."  (*America Online*, at p. 11.)

The *America Online* court explained both the Franchise Investment Law and the CLRA share the common purpose of protecting California residents from unfair or deceptive business practices, and include a provision invalidating any waiver of the protections those laws provide.  (*America Online*, *supra*, 90 Cal.App.4th at p. 11.)  Accordingly, to prevent California consumers from potentially losing the CLRA's unwaivable rights, the *America Online* court concluded the burden rests on the defendant "to prove that enforcement of the forum selection clause would not result in a significant diminution of rights to California consumers."  (*America Online*, at p. 10.)

Here, all of Verdugo's claims are based on her statutory rights under the Labor Code.  She alleges her first six causes of action directly under the Labor Code, seeking unpaid wages, statutory penalties, interest, and attorneys fees based on Alliantgroup's failure to provide overtime compensation, accurate wage statements, meal breaks, outstanding wages upon termination, earned commissions, and vacation pay. (§§ 200-204, 226, 226.7, 227.3, 1194.)  Verdugo's seventh and eighth causes of action seek restitution under Business and Professions Code section 17200 et seq. and civil penalties under the PAGA based on the same Labor Code violations alleged in the first six causes of action.

9

The California Legislature declared these rights cannot "in any way be *contravened or set aside* by a private agreement, whether written, oral, or implied." (§ 219, subd. (a), italics added; see § 1194, subd. (a) [employee has right to bring civil action for unpaid minimum wage and overtime compensation "[n]otwithstanding any agreement to work for a lesser wage"].)  California courts repeatedly have recognized sections 219 and 1194 make the Labor Code provisions on which Verdugo bases her claims unwaivable, and also make any contract purporting to waive those rights illegal and unenforceable.  (See, e. g., *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 619 (*Schachter*) ["'agreement[s] prospectively waiving an employee's rights under sections 201 [and 202] to receive all his or her earned but deferred or unpaid wages . . . constitute . . . waivers which section 219 renders illegal and unenforceable'" (italics omitted)]; *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 455 & fn. 3 (*Gentry*) ["By its terms, the rights to the legal minimum wage and legal overtime compensation conferred by [section 1194] are unwaivable"], abrogated on other issue in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 359 (*Iskanian*); *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1208 (*Hoover*) ["the rights accorded by sections 203, 1194, and 2802 may not be subject to negotiation or waiver"]; see also *Iskanian*, at p. 383 ["employee's right to bring a PAGA action is unwaivable"].)

Like the clauses at issue in *Wimsatt* and *America Online*, the Employment Agreement's forum selection clause has the potential to contravene an antiwaiver statute designed to protect California residents from business practices that do not meet Labor Code standards.  If enforced, the forum selection clause would require Verdugo to litigate her Labor Code wage claims in Texas, where the Employment Agreement's choice-of-law clause would require the court to apply Texas law unless a Texas court decides not to enforce the choice-of-law clause.  Accordingly, to prevent the forum selection clause from operating as a waiver of Verdugo's unwaivable Labor Code rights, *Wimsatt* and

10

*America Online* place the burden on Alliantgroup to show enforcing the forum selection clause will not diminish Verdugo's substantive rights in any way.

Alliantgroup contends *Wimsatt* and *America Online* do not apply here because those cases did not involve an employment agreement or Labor Code claims. The specific claims involved in those cases, however, are irrelevant to our analysis. The decisions in *Wimsatt* and *America Online* were based on statutes the Legislature enacted and specifically made unwaivable to protect California residents. (*America Online*, *supra*, 90 Cal.App.4th at pp. 10-11; *Wimsatt*, *supra*, 32 Cal.App.4th at pp. 1520-1522.) Verdugo's claims also are based on statutory rights the Legislature has declared unwaivable, and therefore the analysis of *Wimsatt* and *America Online* applies with equal force here.

Alliantgroup points out the antiwaiver provisions of the Franchise Investment Law and the CLRA specifically state any "waiver" or attempt to "waive" the protections of those laws is "void" (Corp. Code, § 31512; Civ. Code, § 1751), but sections 219 and 1194 do not expressly prohibit a "waiver" or declare any kind of agreement "void" (§§ 219, subd. (a), 1194, subd. (a)). According to Alliantgroup, the Labor Code rights on which Verdugo bases her claims do not rise to the level of the Franchise Investment Law and CLRA rights at issue in *Wimsatt* and *America Online* because the Labor Code rights were declared unwaivable by case authority and common law, not statute. We do not find this argument persuasive. Section 219 declares the Labor Code provisions on which Verdugo bases her claims cannot "in any way be contravened or set aside by private agreement" (§ 219, subd. (a)), and case law uniformly recognizes these statutory provisions make the rights unwaivable. (See, e.g., *Schachter*, *supra*, 47 Cal.4th at p. 619; *Gentry*, *supra*, 42 Cal.4th at p. 455; *Hoover*, *supra*, 206 Cal.App.4th at p. 1208.) Moreover, whether the Labor Code provisions include the words "waiver" or "void" is irrelevant. We must look to the legal effect of these statutes. (See *America Online*, *supra*, 90 Cal.App.4th at pp. 10-11; *Wimsatt*, *supra*,

11

32 Cal.App.4th at pp. 1520-1522.)  In doing so, it is apparent Sections 219 and 1194 have the same legal effect as the antiwaiver provisions in the Franchise Investment Law and the CLRA.

Alliantgroup also contends *Wimsatt* and *America Online* do not apply because Verdugo did not expressly agree to waive her rights under the Labor Code; she merely agreed to litigate her claims in Texas.  Again, Alliantgroup misses the point. *Wimsatt* and *America Online* also involved contractual provisions that designated an exclusive forum for litigation without an express waiver of the rights under the Franchise Investment Law or the CLRA.  Those courts nonetheless found the burden of proof rested on the party seeking to enforce the forum selection clause because the clause operated as a waiver of California statutory rights if the court in the designated forum did not apply California law and the law in the forum did not provide equivalent rights.  (*America Online*, *supra*, 90 Cal.App.4th at p. 5 ["Enforcement of the contractual forum selection and choice of law clauses would be the *functional equivalent* of a contractual waiver of the consumer protections under the CLRA" (italics added)]; *Wimsatt*, *supra*, 32 Cal.App.4th at p. 1522 [forum selection clause would be "effective equivalent" of a waiver].)  Here, the forum selection clause has the potential to operate as a waiver, and therefore Alliantgroup bears the burden to show it does not.

According to Alliantgroup, *Intershop Communications* supports its contention the rationale of *Wimsatt* and *America Online* does not apply to Labor Code claims.  Alliantgroup misinterprets that case.  *Intershop Communications* involved an employee's claim against his former employer for breaching a stock options exchange agreement that included a forum selection clause designating Germany as the exclusive forum for any litigation relating to the agreement.  (*Intershop Communications*, *supra*, 104 Cal.App.4th at p. 195.)  The employee argued section 219 precluded the employer from enforcing the forum selection clause because the stock shares at issue were essentially unpaid wages.  The *Intershop Communications* court rejected that contention

12

because the employee did not allege any claims under the Labor Code and failed to explain how the stock options exchange agreement potentially violated any of the unwaivable statutory provisions identified in section 219.  (*Intershop Communications*, at pp. 200-201.)  Here, all of Verdugo's claims are based on statutory provisions section 219 declares unwaivable, and therefore *Intershop Communications* does not apply.[3]

Finally, Alliantgroup contends *Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286 (*Olinick*), shows a forum selection clause may be applied to unwaivable statutory claims arising out of the employer-employee relationship.  In *Olinick*, a corporate executive and his attorney negotiated an employment contract with his employer that included a forum selection clause.  The executive later sought to avoid the clause when his employment was terminated and he sued for unlawful discrimination under California's Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA).  (*Olinick*, *supra*, 138 Cal.App.4th at pp. 1290-1292.)  The Court of Appeal upheld the trial court's decision to enforce the forum selection clause because the court found the designated forum provided the executive an adequate remedy for his discrimination claims, and therefore the forum selection clause was not contrary to California's public policy.  (*Id*. at pp. 1301-1304.)  In reaching this conclusion, the *Olinick* court emphasized the FEHA lacked an antiwaiver provision, but then

---

[3]       Alliantgroup also relies on *Galen v. Redfin Corp.* (2014) 227 Cal.App.4th 1525, which enforced an arbitration agreement requiring an employee to arbitrate his Labor Code wage and hour claims in another state.  Alliantgroup improperly relies on *Galen* because the Supreme Court granted review in that case 12 days before Alliantgroup filed its brief.  (*Galen v. Redfin Corp.* (2014) 227 Cal.App.4th 1525, review granted Nov. 12, 2014, S220936.)  Moreover, *Galen* does not support Alliantgroup's contention because it does not address *Wimsatt*, *America Online*, or determine which party bears the burden of proof on a motion to enforce a mandatory forum selection clause.

13

paradoxically noted case law has recognized an employee's FEHA rights are unwaivable. (*Olinick*, at pp. 1304-1305.)

Olinick is distinguishable because it relies on the absence of an express antiwaiver provision in the FEHA. In contrast, the Labor Code claims we address are governed by an express antiwaiver provision. More importantly, *Olinick* does not affect our analysis because it does not address the issue of who carries the burden of proof in determining whether to enforce a mandatory forum selection clause. Although the decision acknowledges the party opposing enforcement generally bears the burden of proof to show enforcement would be unfair or unreasonable, the decision does not discuss or cite *Wimsatt* or *America Online*. (*Olinick*, *supra*, 138 Cal.App.4th at p. 1294.) "A court's opinion is not authority for a proposition not considered in it." (*People v. Anderson* (2015) 232 Cal.App.4th 1259, 1275 (*Anderson*).)

C.     *Alliantgroup Failed to Meet Its Burden to Show Enforcing the Forum Selection Clause Would Not Diminish Verdugo's Statutory Rights*

Verdugo contends the forum selection clause cannot be enforced because Alliantgroup failed to show enforcement would not diminish her unwaivable statutory rights. Thus, according to Verdugo, the forum selection clause is unenforceable as against public policy because it purports to waive the unwaivable wage and hour protections the Labor Code provides to all California employees. We agree.

In *Hall*, this court first addressed whether a forum selection clause was unenforceable as against public policy. The plaintiffs were two California investors who purchased shares in a corporation and later sued the corporation for violating California's Corporate Securities Law of 1968 (Corp. Code, § 25000 et seq.; Securities Law). The corporation moved to stay or dismiss the action based on a forum selection clause and a choice-of-law clause designating Nevada and its laws. The trial court granted the motion, but the Court of Appeal reversed because enforcing the clauses would violate the public policy embodied in the Securities Law. (*Hall*, *supra*, 150 Cal.App.3d at pp. 413-415.)

14

The *Hall* court began its analysis by noting the validity of the forum selection clause was "inextricably bound up" in the validity of the related choice-of-law clause because both affected the ability of California investors to invoke the Securities Law's protections (*Hall*, *supra*, 150 Cal.App.3d at p. 416), and neither clause could be enforced if doing so "'would violate a strong California public policy . . . [or] "result in an evasion of . . . a statute of the forum protecting its citizens"'" (*id*. at p. 417). The *Hall* court determined the Legislature articulated a strong public policy aimed at protecting the public from fraud and deception in securities transactions by regulating those transactions and providing statutory remedies under the Securities Law. The "cornerstone" of these regulations is an antiwaiver provision that voids "'[a]ny condition, stipulation or provision purporting to bind any person acquiring any security to waive compliance with any provision of this law.'" (*Hall*, at p. 417.)

Noting no published decision had addressed the Securities Law's antiwaiver provision, the *Hall* court relied on a United States Supreme Court decision that held a similar antiwaiver provision in a federal securities law prevented enforcement of an arbitration agreement. (*Hall*, *supra*, 150 Cal.App.3d at p. 418 citing *Wilko v. Swan* (1953) 346 U.S. 427, 434-435.)[4] The Supreme Court concluded enforcing the arbitration agreement would result in a waiver of the unwaivable protections the federal securities law guaranteed to all investors because the nuanced nature of the securities law likely would lead an arbitrator to misinterpret the law and the arbitrator's decision would not be subject to review. (*Hall*, at p. 418, citing *Wilko* at pp. 435-437.)

By analogy, the *Hall* court concluded the choice-of-law clause requiring the California plaintiffs to litigate their Securities Law claims under Nevada law violated the

---

[4] The United States Supreme Court later reversed its *Wilko* decision in *Rodriguez de Quijas v. Shearson/American Express, Inc.* (1989) 490 U.S. 477, based on the Federal Arbitration Act's (9 U.S.C. § 1 et seq.) public policy favoring arbitration as a quick and cost effective means of dispute resolution.

15

Securities Law's antiwaiver provision and thereby rendered the related forum selection clause unenforceable: "Similarly, we believe the right of a buyer of securities in California to have California law and its concomitant nuances apply to any future dispute arising out of the transaction is a 'provision' within the meaning of [the antiwaiver statute] which cannot be waived or evaded by stipulation of the parties to a securities transaction." (*Hall*, *supra*, 150 Cal.App.3d at p. 418.) In reaching this conclusion, the *Hall* court did not conduct a comparative analysis of California's and Nevada's laws because any contractual provision requiring application of another state's laws necessarily violated the Securities Law's antiwaiver provision. (*Hall*, at pp. 418-419.)

In *America Online*, the Court of Appeal applied *Hall* and affirmed the trial court's decision refusing to enforce a forum selection clause and related choice-of-law clause because enforcement would violate the California public policy embodied in the CLRA and its antiwaiver provision. (*America Online*, *supra*, 90 Cal.App.4th at p. 13.) The *America Online* court explained, "The CLRA parallels the Corporate Securities Law of 1968, at issue in *Hall*, insofar as the [CLRA] is a legislative embodiment of a desire to protect California consumers and furthers a strong public policy of this state. . . . [¶] . . . Therefore, by parity of reasoning, enforcement of AOL's forum selection clause, which is also accompanied by a choice of law provision favoring Virginia, would necessitate a waiver of the statutory remedies of the CLRA, in violation of that law's antiwaiver provision [citation] and California public policy." (*America Online*, at pp. 14-15.)

Like the *Hall* court, the *America Online* court explained it was unnecessary to conduct a comparative analysis of California and Virginia law to determine whether they provided consumers materially different protections because enforcing the clauses would "inevitab[ly] . . . eliminate" the specific protections the California Legislature enacted and made unwaivable. (*America Online*, *supra*, 90 Cal.App.4th at p. 14.) The Court of Appeal also rejected the contention the Virginia court may choose to apply California law, explaining "it [would be] counterintuitive to believe that a Virginia court

16

would invoke California law to resolve a contract-based consumer dispute against a Virginia domiciliary where the parties agreed to have Virginia law applied, and where Virginia has a statutory consumer protection law of its own."[5]  (*Id*. at p. 14, fn. 6.) Nonetheless, the *America Online* court compared California and Virginia consumer protection laws and concluded they provided materially different protections because Virginia law did not authorize class actions, allowed only limited injunctive relief, and did not allow enhanced remedies for disabled and senior consumers, or punitive damages. These material differences "reinforced" the *America Online* court's conclusion that enforcing the forum selection clause would violate the California public policy embodied in the CLRA.  (*America Online*, at pp. 16-18.)

Here, Verdugo also bases her claims on important statutory rights the Legislature made unwaivable through an express antiwaiver provision.  The Labor Code provisions underlying all of Verdugo's claims further California's fundamental public policy of requiring California employers to fully and promptly pay all wages due their employees.  (See *Crab Addison, Inc. v. Superior Court* (2008) 169 Cal.App.4th 958, 970 ["So great is the public policy protecting employees' right to [wages and] overtime compensation that the right is 'unwaivable'"]; *Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, 574 ["'Public policy has long favored the "full and prompt payment of wages due an employee." [Citation.]  "[W]ages are not ordinary debts . . . . [B]ecause of the economic position of the average worker and, in particular, his

---

        5        The choice-of-law clause in *America Online* required Virginia law to be applied without regard to any conflict-of-law analysis. (*America Online*, *supra*, 90 Cal.App.4th at p. 6 ["'The laws of the Commonwealth of Virginia, *excluding its conflicts-of-law rules*, govern this Agreement and your membership'" (italics added)].) The *America Online* court, however, did not rely on the italicized portion of the choice-of-law clause to support its analysis.  To the contrary, it treated the clause as an ordinary choice-of-law clause, noting the clause "favor[ed]" Virginia without ever citing the italicized language or stating the clause mandated application of Virginia law despite any conflict-of-law analysis.  (*Id*. at p. 14, fn. 6 & p. 15.)

17

dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay" promptly'"], abrogated on a different issue by *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 901.)  Indeed, not only does the Labor Code provide specific standards governing when and how employers must pay wages and provide meal and rest breaks to their employees (§§ 200-244, 1194), the Labor Code also provides specific remedies designed to encourage employees to bring civil actions to enforce those rights, including statutory penalties, interest, and attorney fees in addition to all unpaid compensation (§§ 203, 218.5, 218.6, 226, 226.3, 1194).  Accordingly, *Hall* and *America Online* prevent Alliantgroup from using a forum selection and choice-of-law clause to circumvent Verdugo's unwaivable statutory rights.

Although we conclude *Hall* and *America Online* apply to prevent Alliantgroup from enforcing its forum selection and choice-of-law clause, we depart from those cases on the need for conducting a comparison between California's laws and those of the foreign jurisdiction.  Simply stated, a comparison is necessary to determine whether enforcing a forum selection and choice-of-law clause would violate California's public policy embodied in its governing statutes.  As explained above, a defendant seeking to enforce a mandatory forum selection clause bears the burden to show enforcement will not in any way diminish the plaintiff's unwaivable statutory rights.  By definition, this showing requires the defendant to compare the plaintiff's rights if the clause is not enforced and the plaintiff's rights if the clause is enforced.  Indeed, a defendant can meet its burden only by showing the foreign forum provides the same or greater rights than California, or the foreign forum will apply California law on the claims at issue.  (Cf., *1-800-Got Junk? LLC v. Superior Court* (2010) 189 Cal.App.4th 500, 512 [choice-of-law provision designating Washington law did not violate public policy embodied in California Franchise Relations Act (Bus. & Prof. Code, § 20000 et seq.) and its antiwaiver provision because Washington law provided franchisees

18

greater protections against termination by prohibiting same acts as California plus additional acts].)  Verdugo has not suggested any other way Alliantgroup could meet this burden.

*Hall* was decided 12 years before *Wimsatt* first recognized an exception to the ordinary burden of proof on a motion to enforce a mandatory forum selection clause (see *Wimsatt*, *supra*, 32 Cal.App.4th at p. 1511; *Hall*, *supra*, 150 Cal.App.3d at p. 411), and therefore *Hall* did not consider whether placing the burden on the defendant to show the plaintiff's rights will not be diminished would require a comparison of the two forums' laws.  (See *Anderson*, *supra*, 232 Cal.App.4th at p. 1275 [opinion is not authority for proposition it did not consider].)  *America Online* was decided after *Wimsatt* and extended its exception to claims under the CLRA, but *America Online* did not address how a defendant could show enforcing a forum selection clause would not diminish a plaintiff's unwaivable statutory rights.  Moreover, although *America Online* stated no comparative analysis of the two forums' laws was required, it nonetheless conducted an extensive comparison of California and Virginia law to "reinforce[]" its conclusion enforcing the forum selection clause would diminish the plaintiffs' statutory rights. (*America Online*, *supra*, 90 Cal.App.4th at pp. 15-18.)  Accordingly, we conclude Alliantgroup may rely on a comparison of California and Texas law to meet its burden to show enforcing the Employment Agreement's forum selection clause will not in any way diminish Verdugo's unwaivable Labor Code rights.

Toward that end, Alliantgroup contends enforcing the forum selection clause will not diminish Verdugo's statutory rights because, "[u]nder Texas'[s] choice of law doctrine, a Texas court *would most likely* apply California law to Verdugo's claims notwithstanding the [Employment Agreement's] choice of law provision."  (Italics added.)  According to Alliantgroup, enforcing the forum selection clause would not violate the Labor Code's antiwaiver provisions *if* Texas's choice-of-law doctrine required the Texas court to apply California law.  This conclusory speculation, however, does not

19

satisfy Alliantgroup's burden of proof. As explained above, Alliantgroup must show enforcing the forum selection clause "*will not diminish in any way*" Verdugo's statutory rights. (*Wimsatt*, *supra*, 32 Cal.App.4th at pp. 1522, italics added; see *America Online*, *supra*, 90 Cal.App.4th at pp. 10-11.) Although Alliantgroup postulates about what a Texas court is "likely" to do, it carefully avoids making any specific and definitive argument that Texas courts either have applied or will apply California wage and hour laws despite a choice-of-law clause designating Texas law.

Alliantgroup could have eliminated any uncertainty on which law a Texas court would apply by stipulating to have a Texas court apply California law in deciding Verdugo's claims, but Alliantgroup failed to do so. Instead, Alliantgroup has carefully preserved its ability to argue to a Texas court that it should apply Texas law, and Alliantgroup has hinted at its intention to do so by seeking to downplay the significance of the statutory rights Verdugo seeks to enforce through this action. As explained above, Alliantgroup has argued the Labor Code provisions on which Verdugo bases her claims are not as significant as the Securities Law and CLRA provisions at issue in *Wimsatt* and *America Online*, and therefore are not entitled to the same protections. Nothing prevents Alliantgroup from making that same argument in Texas.

This court confronted a similar situation in *Hall*. There, the defendant argued the possibility a Nevada court would apply California law rendered the forum selection clause enforceable, but we rejected that argument because the defendant had previously argued Nevada law should be applied and the defendant declined the opportunity to eliminate any doubt by refusing to stipulate that California law applied. We also noted Nevada law included an antiwaiver provision comparable to California's that would have rendered any stipulation by the parties to apply California law unenforceable in a Nevada court. (*Hall*, *supra*, 150 Cal.App.3d at pp. 418-419.) Although a stipulation to apply California law may have been ineffective because of Nevada's antiwaiver provision, that is not the case here. Texas law does not include an

20

antiwaiver provision that would prevent the parties from preserving Verdugo's unwaivable Labor Code rights by stipulating to have a Texas court apply California law. Accordingly, Alliantgroup's failure to stipulate that California law applies, coupled with its efforts to minimize the significance of the public policy underlying Verdugo's Labor Code rights, presents an even stronger case for rejecting Alliantgroup's contention a Texas court most likely would apply California law.

To support its contention a Texas court "would most likely" reject the parties' choice-of-law clause and apply California law, Alliantgroup cites a Texas Supreme Court case establishing a three-part test for determining whether to enforce a choice-of-law clause. (See *DeSantis v. Wackenhut Corp.* (Tex. 1990) 793 S.W.2d 670, 677-678 (*DeSantis*).) That test examines and compares the significance of each state's relationship to the parties and their transaction, each state's interest in having its laws applied to the parties' dispute, and the impact applying one state's laws would have on any fundamental policy underlying the other state's laws.[6] (*Id.* at p. 678.) Alliantgroup, however, does not apply these three steps to show that enforcing the choice-of-law clause would contravene the fundamental public policy embodied in the Labor Code's wage and hour provisions. Indeed, consistent with its effort to preserve the right to argue a Texas court should enforce the choice-of-law clause and apply Texas law, Alliantgroup fails to identify or compare Texas and California law on overtime pay, breaks, and the other compensation issues Verdugo raises, it does not identify or compare the policies

---

[6] More specifically, the test's three parts ask (1) whether another state has a more significant relationship with the parties and the transaction than the contractually designated state such that the other state's laws would apply in the absence of the choice-of-law clause; (2) whether that other state has a materially greater interest in the issues presented; and (3) whether applying the laws of the contractually-designated state would contravene a fundamental policy of the state with the materially greater interest. (*DeSantis*, *supra*, 793 S.W.2d at p. 678.) All three steps must be satisfied for the court to reject the parties' choice-of-law clause; if any step is lacking, the parties' choice will be enforced. (*Mary Kay, Inc. v. Woolf* (Tex.Ct.App. 2004) 146 S.W.3d 813, 816-817.)

21

underlying Texas's and California's laws or either state's interests in having its laws applied, and it fails to address the impact applying Texas law would have on any fundamental California policy.

Instead, without any analysis, Alliantgroup cites two United States District Court cases for the conclusion "Texas courts routinely hold that out-of-state law applies despite choice-of-law provisions in employment agreements dictating the applicability of Texas law." (See *Cardoni v. Prosperity Bank* (S.D.Tex. 2014) 2014 U.S. Dist. Lexis 142027 (*Cardoni*); *Maxxim Medical, Inc. v. Michelson* (S.D.Tex. 1999) 51 F.Supp.2d 773 (*Maxxim*), reversed and vacated on other grounds, 182 F.3d 915 (5th Cir.1999).) Alliantgroup fails to acknowledge both of these cases address whether a choice-of-law clause should be enforced in the context of a challenge to a noncompete agreement.[7] (*Cardoni*, at pp. *5-*6; *Maxxim*, at pp. 778-779.) The state policies these cases examine and compare involve the restraint on trade that arises when a noncompete agreement prevents an employee from starting a new business or taking a new job. (*Cardoni*, at pp. *13-*16; *Maxxim*, at pp. 780-781.) The state policies underlying Verdugo's claims for unpaid wages and the failure to provide breaks and accurate wage statements are much different, and Alliantgroup does not address them.[8] Accordingly, Alliantgroup

---

[7] *DeSantis* also involved whether a choice-of-law clause should be enforced in the context of a challenge to a noncompete agreement. The *DeSantis* court refused to enforce a choice-of-law clause designating Florida law and instead applied Texas law. (*DeSantis*, *supra*, 793 S.W.2d at p. 681.)

[8] Alliantgroup quotes *Cardoni* for the proposition that where the employee performed his or her work "'alone can be conclusive in determining what state's law applies.'" (See *Cardoni*, *supra*, 2014 U.S. Dist. Lexis at p. *10.) Similarly, Alliantgroup quotes *Maxxim* for the proposition "the 'factor that tips the balance to California is that the gist of the agreement was the performance of personal services, for the most part, in California.'" (See *Maxxim*, *supra*, 51 F.Supp.2d at p. 778.) Alliantgroup presents these two quotes to establish that the location of the employee's work determines whether a Texas court will apply a choice-of-law clause. Not true. Alliantgroup fails to acknowledge both of these quotes are from the courts' analysis of the first step of the *DeSantis* test—i.e., determining which state has the most significant contacts with the

22

failed to show a Texas court would apply California law, and therefore Alliantgroup failed to meet its burden to show enforcing the forum selection clause would not diminish the unwaivable statutory rights on which Verdugo bases her claims.

Alliantgroup also contends the forum selection clause may be enforced even if a Texas court refuses to apply California law because Texas law provides Verdugo with "adequate" remedies. That contention fails for two reasons. First, the question is whether enforcing the forum selection clause would diminish Verdugo's unwaivable rights under the Labor Code, not whether Texas law provides "adequate" remedies. (*Wimsatt*, *supra*, 32 Cal.App.4th at p. 1522; see *America Online*, *supra*, 90 Cal.App.4th at pp. 10-11.) Alliantgroup cites *Olinick* to support its contention adequacy of the remedies is the proper standard. As explained above, however, *Olinick* did not address *Wimsatt* or *America Online* and did not decide which party bears the burden of proof on a motion to enforce a forum selection clause when unwaivable statutory rights are at issue.

Second, Alliantgroup fails to show the remedies Texas law provides are "adequate," let alone that enforcing the forum selection clause would not diminish Verdugo's rights. According to Alliantgroup, Verdugo's rights are adequately protected because Texas law authorizes her to bring a claim for breach of contract or common count for money had and received to recover her unpaid wages. Alliantgroup, however, fails to cite any Texas authority granting Verdugo rights comparable to the rights the Labor Code establishes regarding overtime compensation, wage statements, meal and rest

parties and their transaction such that its laws would apply in the absence of a choice-of-law clause. As explained above, the test also requires an analysis to determine which state has the materially greater interest and whether a fundamental policy of the non-designated state would be contravened by applying the law of the contractually-designated state. Alliantgroup fails to acknowledge *Cardoni*'s and *Maxxim*'s analysis of these steps, nor does Alliantgroup conduct any analysis under these latter two steps.

23

breaks, pay upon termination, commissions, and vacation pay. (See, e.g., §§ 200-244, 1194.) Alliantgroup also fails to cite any Texas authority granting Verdugo comparable remedies for the violation of these rights, including interest, statutory penalties, and attorneys fees in addition to unpaid wages. (See, e.g., §§ 203, 218.5, 218.6, 226, 226.3, 1194.)

Finally, at oral argument, Alliantgroup argued we should affirm the trial court's ruling because the court stayed rather than dismissed the action, and therefore the trial court retains jurisdiction to lift the stay and proceed with the action if the Texas court refuses to apply California law. According to Alliantgroup, the ability to resume the action if "something goes awry" is the reason California trial courts generally are required to stay rather than dismiss an action when ordering parties to litigate their dispute in a foreign jurisdiction under the forum non conveniens doctrine. Alliantgroup, however, overstates a trial court's authority to resume an action after staying it on forum non conveniens grounds.

As Alliantgroup contends, a trial court that stays an action on forum non conveniens grounds retains jurisdiction over the parties and the cause to protect the interests of the California resident pending the foreign forum's final decision. (*Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 857; *Ferreira v. Ferreira* (1973) 9 Cal.3d 824, 841 (*Ferreira*).) The California court "'can compel the foreign [party] to cooperate in bringing about a fair and speedy hearing in the foreign forum; it can resume proceedings if the foreign action is unreasonably delayed or fails to reach a resolution on the merits.'" (*Archibald*, at p. 857; see *Ferreira*, at p. 841.) In short, "the staying court can resume proceedings if the foreign forum proves *unsuitable*." (*Archibald*, at p. 862, italics added.)

In the forum non conveniens context, a forum is unsuitable only if it lacks jurisdiction or its statute of limitations bars the action. "It bears emphasis that '[i]t is sufficient that the action can be brought, although not necessarily won, in the suitable alternative forum.' [Citations.] That the law is less favorable to the plaintiffs in the

24

alternative forum, or that recovery would be more difficult if not impossible, is irrelevant to the determination whether the forum is suitable unless 'the alternative forum provides no remedy at all.' [Citations.]" (*Guimei v. General Electric Co.* (2009) 172 Cal.App.4th 689, 696; see *Stangvik v. Shiley, Inc.* (1991) 54 Cal.3d 744, 764.)

Contrary to Alliantgroup's contention, the Texas court's decision to apply Texas law in deciding Verdugo's claims would not make Texas an unsuitable forum, and would not necessarily allow the trial court to resume proceedings on Verdugo's claims. If the trial court sought to resume proceedings every time the foreign jurisdiction made an adverse ruling, the unseemly conflicts among jurisdictions that the forum non conveniens doctrine is designed to eliminate would be commonplace. (See *Ferreira*, *supra*, 9 Cal.3d at p. 841.) Accordingly, the possibility the trial court could resume proceedings on Verdugo's claims fails to establish enforcing the forum selection clause would not diminish Verdugo's unwaivable statutory rights under the Labor Code.[9]

---

[9] Because we conclude the forum selection clause is unenforceable as against public policy, we do not address Verdugo's numerous other challenges to the clause.

III

DISPOSITION

The order is reversed.  Verdugo shall recover her costs on appeal.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.

26