Filed 6/27/23

<u>**CERTIFIED FOR PARTIAL FOR PARTIAL PUBLICATION**</u>*****

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JON SCHMIDT,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TRINUT FARM MANAGEMENT, INC.,<br><br>    Defendant and Respondent. | F083763<br><br>(Stanislaus Super. Ct.<br>No. CV-21-000749)<br><br>**OPINION** |

    APPEAL from a judgment of the Superior Court of Stanislaus County. Sonny S. Sandhu, Judge.

    Law Office of Hastings & Ron and Natali A. Ron for Plaintiff and Appellant.

    Petrie Leath Larrivee & O'Roarke and Sean T. O'Rourke for Defendant and Respondent.

-ooOoo-

---

    ***** Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I. through V. of the Discussion.

Appellant and plaintiff Jon Schmidt appeals from a judgment of dismissal entered in favor of respondent and defendant Trinut Farm Management, Inc. (TFMI) after TFMI successfully brought a motion to quash pursuant to Code of Civil Procedure section 418.10.[1] We construe the appeal as encompassing not only the judgment but also the order that led to its entry – i.e., the court's ruling on TFMI's motion to quash. We reverse the judgment and remand with instructions for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Schmidt's Complaint and Causes of Action

On February 17, 2021, Schmidt filed a complaint alleging seven causes of action against TFMI. Schmidt alleged he entered into two oral contracts with TFMI for which he has not been paid – one for his management of TFMI farms located in Arizona and New Mexico (out-of-state management services) and the other for consulting services he rendered in connection with the management of TFMI orchards located in California (in-state consulting services). In addition, Schmidt alleged he is the assignee of claims against TFMI assigned to him by a third party, Midwest Distributing, Inc. dba Summit Gold (Summit Gold). As assignee, Schmidt alleged TFMI is obligated to pay him the outstanding balance on invoices issued by Summit Gold for goods sold to TFMI (assigned Summit Gold invoices).

Schmidt's first cause of action was for breach of contract in connection with both the out-of-state management services contract and in-state consulting services contract. His second cause of action was for breach of contract in connection with the assigned Summit Gold invoices. In his third cause of action, Schmidt sought restitution in connection with all of his claims. In his fourth cause of action, Schmidt alleged TFMI fraudulently induced him to enter into the in-state consulting services contract and out-of-state management services contract. Schmidt's fifth cause of action was brought in

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

2.

connection with all of his claims and alleged TFMI breached the implied covenant of good faith and fair dealing implied at law in all contracts. His sixth and seventh causes of action alleged common counts for an open book account and an account stated, respectively, in connection with the assigned Summit Gold invoices.

## II.    TFMI's Motion to Quash

On September 2, 2021, TFMI moved to quash service of the summons and complaint pursuant to section 418.10. TFMI stated its "grounds for [the] motion are that the Second, Third, Fifth, Sixth and Seventh Causes of Action of the Complaint are based on a series of contracts with … Summit Gold" and that each of the assigned Summit Gold invoices contains a provision demonstrating the action is not properly brought in California. Specifically, the provision at issue reads:

> "10.   Governing Law
>
> "Any Agreement arising out of this transaction shall be deemed to have been made in Peoria County, Illinois. The parties agree that the validity, interpretation and performance of any agreement arising out of this transaction shall be governed by the laws of the State of Illinois without regard to conflicts of interest laws. Buyer [i.e., TFMI] and Seller [i.e., Summit Gold] hereby submit to the exclusive jurisdiction of the state or federal courts located in Peoria, Illinois for the resolution of any disputes hereunder. This shall be the sole and exclusive jurisdiction and venue for the purpose of adjudication of any rights and liabilities hereunder." (Hereafter, the "subject provision.")

In addition, TFMI contended Schmidt's "supposed employment in Arizona … was to be through an entity called Trinut Farms Arizona, LLC…. Here, [Schmidt] has attempted to sue Trinut Farms Arizona, LLC, as [TFMI]."

On September 30, 2021, Schmidt filed his opposition to TFMI's motion to quash arguing, among other things, that "[c]ourts have refused to uphold venue selection clauses which are contrary to the express intent of the legislature and the statutory scheme" – a scheme which he contended includes section 395 et seq., and specifically, section 395.5 which provides in part "[a] corporation … may be sued … in the county

where the contract is made or is to be performed, or where the obligation or liability arises, or the breach occurs; or in the county where the principal place of business of such corporation is situated, subject to the power of the court to change the place of trial as in other cases." Schmidt cited several cases he contended stand for the proposition that an agreement to set venue in a location other than that provided by the venue statutes is impermissible and void as against public policy. Schmidt contended the subject provision violated California's venue statutes.

Schmidt further argued the choice of law clause in the subject provision should not be enforced, and California law should apply, because (1) TFMI has its principal executive office in California; (2) both Schmidt and TFMI's principals reside in California; (3) Summit Gold maintained its executive offices in California; (4) the Summit Gold contract was entered into in California and its products were distributed to TFMI's (or its principal's) California properties; (5) "[a]ll facts occurred in California, and all witnesses are located in California"; and (6) the only relationship the case has to Illinois is that Summit Gold was incorporated there.

Finally, Schmidt argued TFMI did not dispute in its motion that Schmidt provided the consulting and management services to TFMI or TFMI affiliated parties; in negotiations for those services, TFMI's principal identified himself as TFMI's President; Trinut Farms Arizona, LLC, was not even formed at the time negotiations were occurring; and there was no discussion between the parties as to services being rendered on behalf of the Arizona based LLC. Schmidt accused TFMI of shifting its assets to other affiliated entities to avoid Schmidt from successfully levying against TFMI property. Schmidt argued that, in light of TFMI's allegations that the wrong party was sued, Schmidt should be allowed to amend its complaint to name the Arizona based LLC and other TFMI affiliated companies as defendants.

On October 6, 2021, TFMI filed its reply in support of its motion to quash. In it, TFMI alleged impropriety on Schmidt's behalf with regard to an application for a writ of

4.

attachment brought by Schmidt.[2] TFMI argued Schmidt had "attempted to use a frozen asset as security for his undertaking" in connection with the writ application. TFMI reasserts this allegation in its respondent's brief but does not explain its relevance to the issues on appeal. Moreover, we are unable to discern any such relevance.[3]

TFMI further contended that Schmidt, in addressing the subject provision, failed to distinguish the difference between a venue clause and a forum selection clause and that Schmidt's arguments concerning the circumstances under which venue clauses should or should not be enforced was inapposite. TFMI argued the subject provision, as it relates to TFMI's motion to quash, operates as a forum selection clause, is not severable from TFMI's contracts with Summit Gold (i.e., the assigned Summit Gold invoices), and should be enforced because it is not unfair or unreasonable.

TFMI also argued Schmidt's contention that TFMI "never once dispute[d] that … Schmidt rendered the services he did, nor does he dispute the terms of the agreement as set forth in Mr. Schmidt's declaration" is a "mistruth." In his declaration in support of TFMI's motion to quash, TFMI's principal, Nav Athwal, stated, in relevant part: "Schmidt never executed the [in-state services contract Athwal had proposed to Schmidt] nor had he verbally accepted the terms[;]" "Schmidt's involvement with [TFMI] was limited to acting as an independent Pest Control Advisor;" TFMI "is not authorized to do business in Arizona and does not do business in that state" whereas the Trinut Farms Arizona LLC is authorized to do business in Arizona; and "[a]s of May 20, 2018, …

---

[2] In August of 2021, Schmidt applied for a right to attach order and for issuance a writ of attachment in connection with his claims. Ultimately, the trial court, having declined to exercise jurisdiction in the matter, made no orders on Schmidt's application for a writ of attachment.

[3] TFMI also argues the substantive merits of the case (i.e., whether Schmidt was actually employed by, or contracted with, TFMI) but does not explain the relevance of its contentions. Such matters are beyond the issues raised on appeal. The trial court did not rule on the substantive merits of the case, nor was it asked to so rule. Notably, its judgment of dismissal was without prejudice to Schmidt's claims.

5.

Schmidt had not executed any agreement with Trinut Farms Arizona, LLC nor had he verbally accepted the terms set forth in [Athwal's proposal to him]."

On November 15, 2021, the trial court issued a ruling on TFMI's motion to quash in which it declined to exercise jurisdiction over the matter. The court wrote, in part:

> "The court finds [Schmidt] has not met his burden of showing why the forum selection clause should not be enforced in full, which means ordering that all causes of action be pursued in Illinois if at all. The court therefore grants the motion to quash service of the complaint on the ground that Illinois is the proper forum for this litigation…. 'Should the [Illinois] courts become unavailable for some unforeseeable reason, [Schmidt] may seek to reinstate his California action. [Citation.] [' ]'" (Bold type omitted.)

On December 3, 2021, the trial court entered judgment in favor of TFMI and against Schmidt. The judgment reads, in part: "Having … granted a Motion to Quash …, the [c]ourt hereby enters Judgment of Dismissal pursuant to … Section 581[,] [subdivision] (h), which provides: The court may dismiss without prejudice the complaint in whole, or as to that defendant, when dismissal is made pursuant to Section 418.10. Dismissal is without prejudice …."

On December 6, 2021, TFMI served Schmidt with notice of entry of the judgment.

On December 10, 2021, Schmidt filed a complaint as part of a new action pending in Stanislaus County superior court against TFMI, Trinut Farms Arizona, LLC, and Nav Athwal alleging causes of action involving the alleged in-state-consulting services and out-of-state management services contracts.[4]

---

[4] TFMI has requested this court take judicial notice of the complaint filed in the new action (*Schmidt v. Trinut Farm Management, Inc.* (Super. Ct. Stanislaus County, 2021, No. 006617). We deferred ruling on the request pending consideration of the case on the merits. We now take judicial notice of the document (Evid. Code, § 452, subd. (d)) but conclude the new action and complaint filed therein are not of consequence to the issues on appeal.

With reference to the new action filed by Schmidt, TFMI argues Schmidt failed to abide by the court's ruling on the motion to quash and the judgment. However, rather than explaining the relevance of this fact to issues on appeal, TFMI states in its respondent's brief that it "will not belabor the point as to what this later filed action represents given the [c]ourt's [o]rder." TFMI's request for judicial notice is similarly

On January 11, 2022, Schmidt timely filed a notice of appeal of the judgment.

## DISCUSSION

### I. We Construe the Notice of Appeal as Including an Appeal from the Trial Court's Order Granting TFMI's Motion to Quash[*]

On January 19, 2023, Schmidt filed a motion to augment the appellate record with an Amended Notice of Appeal which Schmidt indicated "was transmitted to the Superior Court on or about September 26, 2021." In it, Schmidt requested augmentation "so the appellate record, and notice of appeal, are clear that [Schmidt] is appealing from a 'Judgment of dismissal under … [ sections] 581d …' as well as '[a]n order or judgment under … [ section] 904.1(a)(3)–(13)', namely, the Order Granting the Motion to Quash, entered on November 15, 2021 …." On February 17, 2023, we denied the motion without prejudice on grounds Schmidt "fail[ed] to establish that each of the documents mentioned in his request was either filed or lodged in the case with the superior court. (Cal. Rules of Court, rule 8.155(a).)"

Although we denied augmentation of the record, we nonetheless construe the notice of appeal as including an appeal from the trial court's order granting TFMI's motion to quash. "A notice of appeal shall be ' "liberally construed so as to protect the right of appeal if it is *reasonably clear* what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 75–76.)

The judgment of dismissal from which Schmidt appeals was premised entirely and expressly on the trial court's November 15, 2021, order granting TFMI's motion to quash. It is reasonably clear Schmidt intended to appeal from said order. Moreover,

cryptic and contends the complaint in the new action "is relevant to the appeal, as it bears upon [Schmidt's] arguments concerning prejudice from the [t]rial [c]ourt's ruling as well as what [Schmidt] might have done prior to the challenged ruling." Because TFMI has failed to support its point with reasoned argument, we deem the point forfeited. (*Valov v. Department of Motor Vehicles* (2005) 132 Cal.App.4th 1113, 1132.)

[*] See footnote, *ante*, page 1.

TFMI could not possibly have been misled to think otherwise and is not prejudiced by our determination that Schmidt's appeal includes an appeal from the November 15, 2021, order.

## II. Schmidt's Contentions on Appeal[*]

On appeal, Schmidt makes three primary contentions: (1) the forum selection clause in the subject provision "should not have been applied to causes of action to which the clause does not relate" – i.e., the subject provision only applies to the claims involving the assigned Summit Gold invoices and not to claims involving Schmidt's alleged contracts with TFMI for in-state consulting services and out-of-state management services; (2) the complaint was improperly dismissed – i.e., TFMI never sought dismissal of the complaint in its motion to quash and the order granting the motion to quash did not result in a dismissal; and (3) the court should not have granted the motion to quash because (a) it was an "improper mechanism" to enforce the forum selection aspects of the subject provision and (b) "all parties are California residents, and California is the most appropriate forum."

## III. Forum Selection Clauses[*]

In *Global Packaging, Inc. v. Superior Court* (2011) 196 Cal.App.4th 1623 (*Global Packaging*), the court discussed the evolution of judicial treatment of forum selection clauses by federal and state courts. (*Id.* at pp. 1630–1633) "Forum selection clauses traditionally faced intense judicial hostility arising from a perceived threat to the court's power within its territory .… The hostile courts interpreted such a clause as forbidding them to hear cases when they indisputably had territorially based jurisdiction. [Citations.] They looked on a forum selection clause as an effort by private parties to deprive them of their rightful power, and they refused to enforce the clauses as contrary to public policy." (*Id.* at p. 1631.) "Eventually a formula was contrived to present these

[*] See footnote, *ante*, page 1.
[*] See footnote, *ante*, page 1.

clauses in a way that smoothed ruffled judicial feathers. Parties moving to enforce forum selection clauses said, in effect, 'We are not saying you *cannot* hear this case, Your Honor. Of course you can hear it. Instead, we are asking you to exercise your discretion and decline to hear it in favor of enforcing the bargain between the parties.' This is the formula adopted by the United States Supreme Court in *The Bremen v. Zapata Off–Shore Co.* (1972) 407 U.S. 1, 12 … (*The Bremen*), the case that gave the official imprimatur to forum selection clauses as embodying the modern and cosmopolitan approach to commercial disputes." (*Id.* at pp. 1631–1632, fn. omitted.) California adopted a similar approach to enforcement of forum selection clauses in *Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 496 (*Smith*). (*Global Packaging*, at p. 1632.)

In discussing *The Bremen*, the court in *Global Packaging* wrote, "the United States Supreme Court in effect approved severing forum from territorially based jurisdiction in this setting. A party could now find itself bound to litigate a dispute in a territory – a forum – where it had no 'presence' whatsoever, either literally or in the minimum-contacts sense, and in which it had made no general appearance." (*Global Packaging*, *supra*, 196 Cal.App.4th at p. 1632.)

## IV. The Trial Court Erred in Determining That Claims Related to the Alleged Contracts for In-State Consulting Services and Out-of-State Management Services Must Be Pursued in Illinois[*]

"The interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. [Citations.] Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect. [Citations.] It is therefore solely a judicial function to interpret a written instrument

---

[*] See footnote, *ante*, page 1.

unless the interpretation turns upon the credibility of extrinsic evidence." (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.) Where extrinsic evidence is not in conflict, as is the case here, the interpretation of a written instrument is reviewed de novo. (*Id.* at p. 866; *Butler v. Economy Fire and Cas. Co.* (1990) 199 Ill.App.3d 1015, 1021 [557 N.E.2d 1281, 1285] ["Where … the facts are not in dispute, the interpretation of a contract is a question of law"].)

The subject provision contained in the assigned Summit Gold invoices relates only to the transactions between Summit Gold and TFMI. The provision states that Peoria, Illinois will be the "exclusive jurisdiction" for "the resolution of any disputes *hereunder*" (italics added), and "shall be the sole and exclusive jurisdiction and venue for the purpose of adjudication of any rights and liabilities *hereunder*" (italics added). Thus, the forum selection clause is unambiguous and, by its own terms, limits its application to the transaction(s) evidenced by the invoice(s).

The invoices were for goods sold by Summit Gold to TFMI. Schmidt's alleged contracts with TFMI for in-state consulting services and out-of-state management services are not a subject of the assigned Summit Gold invoices and, in fact, are alleged to predate the invoices. The forum selection language of the subject provision unambiguously applies only to disputes relating to the assigned Summit Gold invoices (i.e., goods sold to TFMI by Summit Gold).

Moreover, in its motion to quash, TFMI only challenged California's suitability as a judicial forum with respect to claims involving the assigned Summit Gold invoices. In its notice of motion and motion, TFMI wrote: "The grounds for this motion are that the Second, Third, Fifth, Sixth and Seventh Causes of Action of the Complaint are based in whole or in part on a series of contracts with a company called Summit Gold….

However, per paragraph 13 [*sic*] [of] the invoices,[5] this [c]ourt [i.e., the California Superior Court] is not the proper [c]ourt." TFMI then goes on to quote the forum selection clauses of the subject provision in support of its motion.

Similarly, in its memorandum of points and authorities, TFMI states, "[Schmidt] has not and cannot alter the contractual agreement which [a]ffects his Second, Third, Fifth, Sixth and Seventh Causes of Action. In short, he cannot bring Summit Gold's claims against [TFMI], absent a waiver of the forum provision from both Summit Gold and [TFMI]. [Schmidt] does not have such a waiver." TFMI summed up its position in this regard by stating, "[t]he sole and exclusive forum for … Schmidt's claims based upon the Summit Gold claims is in the State or Federal Courts of Illinois[;]" "the Second, Third, Fifth, Sixth and Seventh causes of Action[] are all premised in whole or in part upon the alleged claims of Summit Gold which are subject to the forum selection clause. Thus, some of … Schmidt's claims cannot proceed in California. What is clear is that the matter cannot proceed on the current complaint.

TFMI, itself, recognized that any right to relief in bringing its motion to quash was limited to those causes of action that were based on the assigned Summit Gold invoices. TFMI expressly excluded Schmidt's first and fourth causes of action from the ambit of its motion to quash. Schmidt's first cause of action was for breach of contract in connection with the alleged contracts between TFMI and him for in-state consulting services and for out-of-state management services. His fourth cause of action was for fraudulent inducement in connection with those same contracts.

TFMI's acknowledgment that one or more of Schmidt's causes of action were premised "in part" on the assigned Summit Gold invoices, implicitly shows that TFMI also recognized that certain causes of action (i.e., Schmidt's third and fifth causes of

---

**5** The referenced paragraph appears to be in error. Presumably, TFMI intended to reference paragraph 10 of the assigned Summit Gold invoices which contains the subject provision.

11.

action) were, as Schmidt describes them in his opening brief, "hybrid" causes of action alleging claims in connection with both the assigned Summit Gold invoices and the alleged contracts for in-state consulting services and out-of-state management services.

The plain language of the subject provision clearly limits its application to the transaction(s) involving the assigned Summit Gold invoices. We see no arguable basis upon which to affirm the trial court's decision to dismiss the case as it relates to the alleged contracts between Schmidt and TFMI for in-state consulting services and out-of-state management services.

Accordingly, we conclude Schmidt should be allowed to pursue such claims in the courts of this state. This includes Schmidt's first and fourth causes of action in their entirety, and his third and fifth causes of action to the extent they are premised on the alleged contracts for in-state consulting services and out-of-state management services.

## V. The Trial Court Had Authority to Stay or Dismiss Claims Related to the Assigned Summit Gold Invoices[*]

Schmidt contends TFMI only requested that service of the summons and complaint be quashed and, therefore, that it was error for the trial court to dismiss the case. Schmidt argues he was not "afforded appropriate notice that the action would ultimately be dismissed." Given our determination in the preceding section that Schmidt should be allowed to pursue his claims related to the alleged contracts for in-state consulting services and out-of-state management services in California, we agree it was error for the court to dismiss the complaint in its entirety. We now consider whether the court had authority to stay or dismiss claims related to the assigned Summit Gold invoices.

"In general, the court may grant relief that is not requested if it is 'encompassed' within the issues raised by the petition. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218, fn. 9 …; *Lee v. Blue Shield of California* (2007)

---

[*] See footnote, *ante*, page 1.

12.

154 Cal.App.4th 1369, 1378 ….)  Conversely, a court may not grant relief that is not encompassed within the issues framed by the pleadings.  (See, e.g., *Marvin v. Marvin* (1981) 122 Cal.App.3d 871, 875 ….)"  (*County of Los Angeles v. Superior Court* (2015) 242 Cal.App.4th 475, 488.)  A similar holding was made in the context of posttrial motions in *Shapiro v. Prudential Property & Casualty Co.* (1997) 52 Cal.App.4th 722.

With the above principles in mind, we now consider whether dismissal of claims related to the assigned Summit Gold invoices was consistent with the relief sought by way of the motion to quash and embraced within the issues framed by the motion.[6]

First, we note the motion was denominated a "motion to quash [§ 418.10]" (Bold type and unnecessary capitalization omitted, brackets in original).  However, the title of the motion is not controlling.  (*City of Santa Maria v. Adam* (2019) 43 Cal.App.5th 152, 163; *Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1577.)  We also note that TFMI did not specify which subdivision of section 418.10 it was moving under in *any* of the motion paperwork.  Section 418.10 provides, in part:

> "A defendant, on or before the last day of his or her time to plead or within any further time that the court may for good cause allow, may serve and file a notice of motion for one or more of the following purposes:  [¶] (1) To quash service of summons on the ground of lack of jurisdiction of the court over him or her.  [¶]  (2) To stay or dismiss the action on the ground of inconvenient forum.  [¶]  (3) To dismiss the action pursuant to the applicable provisions of Chapter 1.5 (commencing with Section 583.110) of Title 8."  (§ 418.10, subd. (a).)

In its notice of motion and motion, TFMI stated it "will move, pursuant to … Section 418.10, for an Order Quashing Service of the Summons and Complaint" which,

---

[6] A review of TFMI's motion to quash reveals it never sought any relief with respect to Schmidt's first and fourth causes of action.  And, as discussed in the preceding section of this opinion, TFMI acknowledged it was only seeking relief with respect to Schmidt's claims involving the assigned Summit Gold invoices and not Schmidt's claims relating to in-state consulting services or out-of-state management services.  Thus, to the extent the court granted relief with respect to the latter service contracts, the trial court went beyond the issues framed by TFMI's motion.

13.

we note, is consistent with relief available under subsection (a)(1) of section 418.10. However, in its notice of motion and motion, TFMI also wrote:

> "[P]er paragraph 10, third and fourth sentences [of the subject provision], 'Buyer [i.e. TFMI] and Seller [i.e., Summit Gold] hereby submit to the exclusive jurisdiction of the state or federal courts located in Peoria, Illinois for the resolution of any disputes hereunder. This shall be the sole and exclusive jurisdiction and venue for the purpose of adjudication of any rights and liabilities hereunder.' This is a forum selection clause. The California Supreme Court has held that forum selection clauses are given effect in this state, absent a showing that enforcement would be unfair or unreasonable. ([*Smith*, *supra*,] 17 Cal.3d 491.)"

Thus, TFMI put Schmidt on notice it was seeking to enforce the forum selection clause. TFMI also identified for Schmidt the criteria by which a trial court may decline enforcement of a forum selection provision – a showing that enforcement would be unfair or unreasonable – and identified California Supreme Court case law holding that "forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." (*Smith*, *supra*, 17 Cal.3d at p. 496.)

Additionally, in its memorandum of points and authorities, TFMI argued Schmidt "cannot bring Summit Gold's claims against [TFMI], absent a waiver of the forum provision from both Summit Gold and [TFMI]. Plaintiff does not have such a waiver." TFMI argued Schmidt "cannot now claim that the forum selection provision is unenforceable" and " '… has freely and voluntarily negotiated away his right to a California forum.' " TFMI also wrote, " ' "[a] defendant may enforce a forum-selection clause by bringing a motion pursuant to sections 410.30 and 418.10, the statutes governing forum non conveniens motions, because they are the ones which generally authorize a trial court to decline jurisdiction when unreasonably invoked and provide a procedure for the motion[,]" ' " quoting *Global Financial Distributors Inc. v. Superior Court* (2019) 35 Cal.App.5th 179, 186. TFMI continued, "[t]he sole and exclusive forum for … Schmidt's claims based upon the Summit Gold claims is in the State or Federal

14.

Courts of Illinois." TFMI further wrote, "Schmidt has wrongly sued [TFMI], based upon the alleged debt owed Summit Gold in contradiction to the Forum Selection clause. As a result, [TFMI], is obliged under … Section 418.10 to challenge jurisdiction." In the concluding paragraphs of its memorandum of points and authorities, TFMI states "this Court cannot exercise jurisdiction over [TFMI]," "service of the Summons and Complaint must be quashed," and "the Summit Gold collection claims cannot proceed in California due to the forum selection clause."

TFMI also mentioned, albeit perfunctorily, section 410.30 as a means of enforcing the forum selection clause. Although TFMI did not quote section 410.30, said code provision provides, in relevant part: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." (§ 410.30, subd. (a).)

Whatever criticisms may fairly be made concerning the content and styling of TFMI's motion, it clearly was directed toward enforcement of the forum selection clause which, if granted, would have necessarily required the court to stay or dismiss claims subject to the clause – i.e., claims related to the assigned Summit Gold invoices. Schmidt had adequate notice of the relief TFMI was seeking in connection with the motion.

Based on the foregoing, we conclude the trial court's ultimate disposition of the case with respect to the claims involving the assigned Summit Gold invoices was consistent with the relief sought by way of TFMI's motion and was embraced within the issues framed by the motion. This, however, does not answer the question of whether the trial court erred in enforcing the forum selection clause. We examine that issue next.

**VI.    Remand is Required Because the Trial Court Erroneously Applied California Law, and Not Illinois Law, to Determine Whether Claims Related to the Assigned Summit Gold Invoices Must Be Pursued in Illinois**

**A.    *Standard of Review***

In granting TFMI's motion to quash, the trial court noted that forum selection clauses are generally enforced in California "in the absence of a showing that enforcement of such a clause would be unreasonable," citing *Smith*, *supra*, 17 Cal.3 at p. 496.  Quoting *Smith* at length, the court wrote

> "Although [plaintiff] relies upon the factors of inconvenience and expense of a[n Illinois] forum, both [plaintiff] and [defendants] reasonably can be held to have contemplated in negotiating their agreement the additional expense and inconvenience attendant on the litigation of their respective claims in a distant forum; such matters are inherent in a reciprocal clause of this type.  … 'Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things.'  [Citation.]  Moreover, although [plaintiff's] witnesses may reside in California, no reason appears why their testimony might not be obtained by deposition or at trial, at [plaintiff's] expense." (*Ibid*.)

The court further wrote: "Finally, '[t]he party opposing enforcement of a forum selection clause ordinarily "bears the 'substantial' burden of proving why it should *not* be enforced[,]" ' " citing *Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 147 (*Verdugo*).)

It is unclear whether the parties agree as to the appropriate standard of review this court should employ in determining whether the trial court erred in enforcing the forum selection clause.  TFMI acknowledges courts are split between applying the abuse of discretion standard and the substantial evidence standard in reviewing such questions and notes the former is the majority view.  Schmidt argues the court abused its discretion in opting to enforce the provision.[7]

---

[7] Schmidt also contends that "[w]hen the evidence of jurisdictional facts is not conflicting, the question of whether a defendant is subject to personal jurisdiction is not binding on the reviewing court."  Schmidt contends there are no conflicts in the evidence.  Here, the issue is not whether California courts have personal jurisdiction over TFMI.

16.

TFMI is correct that there is a split of authority in the appropriate standard of review to apply in reviewing an order to enforce a forum selection clause. (*America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 7–9 [First District Court of Appeal – adoption of abuse of discretion standard]; *Korman v. Princess Cruise Lines, Ltd.* (2019) 32 Cal.App.5th 206 [Second District Court of Appeal – same]; *Verdugo, supra,* 237 Cal.App.4th 141 [Fourth District Court of Appeal – same]; contra, *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1680 (*Cal-State*) [Third District Court of Appeal – adoption of substantial evidence standard]; *Lifeco Services Corp. v. Superior Court* (1990) 222 Cal.App.3d 331, 334 [Sixth District Court of Appeal – same].)

The split of authority has been the subject of discussion in other cases. As stated by the *Verdugo* court in adopting the majority view: "The *Cal-State* decision represents the minority view and has been criticized as inconsistent with Supreme Court authority: '[G]iven existing guidance on this question from our Supreme Court, and the more consistent line of Court of Appeal decisions, which likewise apply the abuse of discretion standard, we disagree with *Cal-State*'s conclusion that the substantial evidence standard applies instead.' [Citations.] We join the majority of cases and apply the abuse of discretion standard of review." (*Verdugo*, *supra*, 237 Cal.App.4th at p. 148.)

That a court has "*discretion* to decline to exercise jurisdiction in recognition of the parties' free and voluntary choice of a different forum" was a basis for our high court to reject the judicial view that forum selection clauses represent an improper attempt to oust a court of jurisdiction. (*Smith*, *supra*, 17 Cal.3d at p. 495, italics added, original italics omitted.) In affirming the lower court's decision to stay California proceedings in enforcing a forum selection clause, the California Supreme Court "conclude[d] that

---

TFMI admitted in its motion to quash that it is a "corporation formed under the laws of the state of California and having its sole place of business in California." The issue is whether the trial court erred in enforcing the forum selection provision notwithstanding TFMI's residency in California.

17.

forum selection clauses are valid and may be given effect, in the court's *discretion* and in the absence of a showing that enforcement of such a clause would be unreasonable." (*Id.* at p. 496, italics added.)

Given our high court's view on the matter, and that of the majority of appellate courts in this state, we likewise join the majority view and review such questions for abuse of discretion.

**B.**     ***Illinois Law Governs Whether the Forum Selection Clause Should Be Enforced***

The subject provision provides, in part: "The parties agree that the validity, interpretation and performance of any agreement arising out of this transaction shall be governed by the laws of the State of Illinois without regard to conflicts of interest laws." As the assignee of Summit Gold, Schmidt "stands in the shoes" of his assignor and " ' "tak[es] his rights and remedies, subject to any defenses which the obligor has against the assignor prior to notice of the assignment." ' " (*Searless Valley Minerals Operations Inc. v. Ralph M. Parsons Service Co.* (2011) 191 Cal.App.4th 1394, 1402, italics omitted.)

The forum selection clause is, itself, an agreement arising out the transaction between TFMI and Summit Gold. Moreover, whether disputes between the parties must be litigated in Illinois is a matter involving both the validity and performance of the agreement. Just as a petition to compel parties to arbitrate a dispute pursuant to contractual provision " ' " 'is in essence a suit in equity to compel specific performance' " ' " of an arbitration provision (*Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515, 532), a motion to enforce a forum selection clause is, in essence, a means of compelling performance of the parties' contractual obligation to resolve disputes in a different forum. Therefore, unless there is a legal reason not to abide by the parties' choice of law in this matter, under the terms of the subject provision Illinois law must be consulted and applied to determine whether the

18.

forum selection clause should be enforced.  For reasons discussed below, we conclude there is no legal impediment to honoring the choice-of-law clause in the subject provision.

There are "strong policy considerations favoring the enforcement of freely negotiated choice-of-law clauses."  (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 462 (*Nedlloyd*).)  In *Nedlloyd*, the California Supreme Court held "[i]n determining the enforceability of arm's-length contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement [Second of Conflict of Laws (hereafter "Restatement")] section 187, which reflects a strong policy favoring enforcement of such provisions."[8]  (*Nedlloyd*, at pp. 464–465, fn. omitted.)

"Briefly restated, the proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law.  If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law.  If, however, either test is met, the court must next determine whether the chosen state's law is contrary

---

[8] Section 187 of the Restatement provides, in relevant part:

"(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue. [¶]  (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either [¶] (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or [¶]  (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."  (Rest., § 187, subds. (1) and (2).)

to a *fundamental* policy of California.  If there is no such conflict, the court shall enforce the parties' choice of law.  If, however, there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue ….'  [Citation.]  If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy."  (*Nedlloyd*, *supra*, 3 Cal.4th at p. 466, fns. omitted.)[9]

We asked the parties to provide supplemental briefing on the question of whether Illinois law should be applied to determine whether to enforce the forum selection clause in the assigned Summit Gold invoices.[10]  In its supplemental briefing, TFMI replied in the negative but acknowledged that all of the *Nedlloyd* factors on whether to apply Illinois law were satisfied – i.e., there is a substantial relationship between Illinois and the

---

[9] The high court also posited that a different test might be appropriate for "[c]hoice-of-law issues arising from contracts subject to the Uniform Commercial Code." (*Nedlloyd*, *supra*, 3 Cal.4th at p. 465, fn. 2 [noting that former Cal. U. Com. Code, § 1105, subd. (1) "provides that, subject to specified exceptions, the parties may choose the law of a state having a 'reasonable relation' to the transaction" and "[t]his 'reasonable relation' test appears to be similar to the 'substantial relationship' test [the Court] adopt[ed] from the Restatement"].)

[10] Specifically, we requested supplemental briefing on "whether Illinois law … should be applied to determine whether to enforce the forum selection clause"; and, in addition to any other argument the parties might wish to make on the subject, "1. Whether Illinois had a substantial relationship to (a) either TFMI or Summit Gold, **or** (b) the transaction between TFMI and Summit Gold.  [Citation.] [¶] 2.  If there was a substantial relationship under either 1.(a) or 1.(b) …, 'whether the chosen state's law is contrary to a *fundamental policy* of California.'  [Citation.]  [¶] 3. 'If … there is a fundamental conflict with California law, … whether California has a "materially great interest than the chose state in the determination of the particular issue…." '  [Citation.] [¶] 4.  If you contend a test other than that adopted in *Nedlloyd* (as reflected in items 1 through 3, above) should be used to determine whether Illinois law should be applied to determine whether to enforce the forum selection clause, please identify the test, its source, and discuss how the test should be applied.  [Citation.]  [¶]  5.  Under Illinois law, what factors must be considered in determining whether to enforce a forum selection clause?"

parties to the Summit Gold transaction; and, as applied here, Illinois law is not contrary to a fundamental policy of California. Schmidt, for his part, contends the *Nedlloyd* factors have not been met.

TFMI argues, among other things, that *Smith*, *supra*, 17 Cal.3 491 "is the seminal California authority on enforcement of forum-selection clauses" and that "[e]ven with a Pennsylvania choice-of-law provision, the California Supreme Court relied upon California law … to enforce the forum-selection clause[,]" citing *id.* at page 495. We agree that *Smith* is authority on enforcement of a forum-selection clause. However, as discussed below, our reading of *Smith* differs from that of TFMI.

TFMI also cites to a number of law journals which note, generally, that different courts take different approaches to the subject whether a parties' contractually chosen law should be applied to determine whether to enforce a forum-selection provision – i.e., some courts have applied the parties' choice of law to the question and others have applied the law of the jurisdiction in which the action was filed. According to TFMI, these journal articles note that most courts apply the law of their own jurisdiction in resolving such questions and that this is the preferred approach of the cited journal authors. However, TFMI acknowledges its own authority notes the latter approach is often taken " 'without a choice of law inquiry.' " In addition, some of those same journal articles have noted, for example, that "[m]ore recently, scholars have begun to wade in, favoring the chosen law" (Clermont, *Reconciling Forum-Selection and Choice-Of-Law Clauses* (2020) 69 Am. U. L. Rev. Forum 171, 172) and that "the most thorough article on the subject … came out solidly in favor of applying the chosen law" because of a "need for certainty" (Clermont, *Governing Law on Forum-Selection Agreements* (2015) 66 Hastings L.J. 643, 656).

TFMI also cites, with very limited discussion, a number of cases wherein it contends the courts applied the law of the jurisdiction in which the court sits. The cases, however, do not aid TFMI's argument. Choice of law was not at issue in two of the

21.

cases, namely *Atlantic Marine Const. Co., Inc. v. United States Dist. Court for Western Dist. of Texas* (2013) 571 U.S. 49, 134 S.Ct. 568, 187 L.Ed.2d 487 and *Manetti-Farrow, Inc. v. Gucci America, Inc.* (1988) 858 F.2d 509. In a third case cited by TFMI, *Animal Film, LLC v. D.E.J. Productions, Inc.* (2011) 193 Cal.App.4th 466, the court consulted both California law, and to a lesser extent, Texas law (the contractual choice of law), to determine whether a forum selection provision was permissive or mandatory. However, it did so without any substantive analysis of *whether* California law or Texas law should be applied to the question before it. TFMI also cites to *CQL Original Products, Inc. v. National Hockey League Players' Assn.* (1995) 39 Cal.App.4th 1347, 1353–1354, for the limited contention that "there was no discussion of *Nedlloyd* factors in enforcing choice-of-forum/choice-of-law clause" in that case. However, a review of the case reveals the *CQL* court expressly considered whether there was a "rational relationship … to the parties' business relationship" – concluding there was (*id.* at p. 1355), and whether there was a "conflict involving fundamental policy in California" – concluding there was not (*id.* at p. 1357) which are, in essence, the same considerations set forth in section 187 of the Restatement endorsed in *Nedlloyd* (Rest., § 187, subds. (1) and (2); *Nedlloyd*, *supra*, 3 Cal.4th at pp. 464–465).

Two additional cases cited by TFMI – *Smith*, *supra*, 17 Cal.3d 491 and *Cal-State*, *supra*, 12 Cal.App.4th – in our view support application of the parties' chosen state law (assuming it meets the requirements of section 187 of the Restatement) in determining whether to enforce a forum selection provision. Before discussing *Smith* and *Cal-State* further, we first conclude below that the requirements of section 187 are met with respect to the application of Illinois law.

In *Nedlloyd*, our high court held that the incorporation of a corporate party in the state whose law has been chosen to govern a given transaction "provides the required 'substantial relationship.' " (*Nedlloyd*, *supra*, 3 Cal.4th at p. 467, citing Rest.2d. Conflict of Laws, § 187, com. f.) In opposing TFMI's motion to quash, Schmidt provided the trial

court with evidence that Summit Gold was incorporated in Illinois.[11]  This is sufficient under *Nedlloyd* to demonstrate a substantial relationship to the transactional parties.[12] (*Nedlloyd*, at p. 467.)  Schmidt argues, however, that none of the parties *to the lawsuit* have a substantial relationship to Illinois.  In doing so, he has not cited any authority to suggest that the subsequent assignment of claims to a California resident effectively eliminates the substantial relationship to Illinois that existed prior to assignment.  Moreover, we are not inclined to adopt a rule that would allow parties to avoid a contractual choice of law provision by subsequently assigning the claim to a third party.

Schmidt also contends, without citation to authority, that California has a "fundamental policy to decide cases and matters in California for residents of California." However, our high court has already acknowledged that "[n]o satisfying reason of public policy has been suggested why enforcement should be denied a forum selection clause … entered into freely and voluntarily by parties who have negotiated at arm's length." (*Smith*, *supra*, 17 Cal.3d at pp. 495–496.)

We have not identified any fundamental policy of California that would be adversely impacted by the application of Illinois law to the question of whether the forum selection provision should be enforced.  Accordingly, we conclude Illinois law must be consulted in determining whether the forum selection provision is to be enforced.[13]

_____

[11] Certification of the Illinois Secretary of State dated March 11, 2013, attesting to Summit Gold's incorporation under the laws of Illinois on December 26, 1995, and its good standing as a domestic Illinois corporation as of the date of the certification.

[12] In addition, a Statement and Designation by Foreign Corporation filed by Summit Gold with the California Secretary of State on March 21, 2013, indicates Summit Gold maintained its "Principal Executive Office" in Peoria, Illinois in addition to maintaining a "Principal Office" in California.  A Corporation – Statement of Information filed by Summit Gold on September 8, 2020, again confirms Summit Gold was an Illinois corporation business addresses in both Illinois and California.

[13] We conclude the result would be the same under Illinois law.  Section 105/5-5 of Chapter 735 of the Illinois Compiled Statutes Annotated provides, in part:  "The parties to any contract, … , in consideration of or relating to any obligation arising out of a transaction covering in the aggregate not less than $250,000, including a transaction otherwise covered by subsection (1) of Section 1-105 of the Uniform Commercial Code,

Contrary to TFMI's contention, this approach is consistent with the approach taken in *Smith* where our high court first consulted the law chosen by the parties to determine whether to enforce the parties' forum selection clause. (*Smith*, *supra*, 17 Cal.3d at p. 494.)

In *Smith*, the plaintiff filed suit against the defendant in the state courts of California in contravention of a forum selection clause providing for trial of the action in Pennsylvania. (*Smith*, *supra*, 17 Cal.3d at p. 493.) In addressing the enforceability of the forum selection clause, the California Supreme Court noted the clause in question also provided that Pennsylvania law governed the dispute and that "[s]uch choice of law provisions are usually respected by California courts." (*Id*. at p. 494.) Therefore, the high court *assumed that Pennsylvania law applied* and "observe[d] that the courts of [Pennsylvania] have held that forum selection clauses will be given effect unless the party assailing the clause establishes that its enforcement would be unreasonable, i.e., that the forum selected would be unavailable or unable to accomplish substantial justice." (*Ibid*.) In affirming the trial court's decision to stay proceedings in this state, the court rejected prior case law to the extent such case law held, or suggested, such clauses were unenforceable, and took the opportunity to adopt a similar rule to that of Pennsylvania.[14] (*Id*. at pp. 495–496.)

---

may agree that the law of [Illinois] shall govern their rights and duties in whole or in part, whether or not the contract, agreement or undertaking bears a reasonable relation to [Illinois]." Schmidt has alleged the aggregate amount due under the assigned Summit Gold invoices is $319,189.28.

[14] The high court noted the Pennsylvania rule "represent[ed] the modern trend" on whether a forum selection clause would be enforced. (*Smith*, *supra*, 17 Cal.3d at p. 494.) It wrote, "it is readily apparent that courts possess discretion to *decline* to exercise jurisdiction in recognition of the parties' free and voluntary choice of a different forum. Moreover, although we have acknowledged a policy favoring access to California courts by resident plaintiffs [citation], we likewise conclude that the policy is satisfied in those cases where, as here, a plaintiff has freely and voluntarily negotiated away his right to a California forum. In so holding we are in accord with the modern trend which favors enforceability of such forum selection clauses." (*Id.* at p. 495.)

*Cal-State* acknowledged the fact that the high court, in *Smith*, applied Pennsylvania law to the question of whether the parties' choice of Pennsylvania as a forum state should be enforced. In considering a similar question with regard to New York, the *Cal-State* court wrote: "There has been no discussion by the parties regarding the enforceability of the choice-of-law provision in the contract. Assuming New York law applies (cf. *Smith*, *supra*, 17 Cal.3d at p. 494 [choice-of-law point not raised, court assumes Pennsylvania law applies]), [defendant] adduced authority in the trial court that New York follows the Restatement Second rule. [Citation.] In the absence of any evidence that the courts of New York have placed nuances upon the Restatement Second rule which differ from California law, we may apply the law of our own jurisdiction." (*Cal-State*, *supra*, 12 Cal.App.4th at p. 1678, fn. 11.)

Based on the language of the subject provision, and guided by our high court's approach in *Smith*, we likewise conclude the trial court should apply Illinois law in determining whether the forum selection clause of the subject provision should be enforced. Here, the parties have identified differences between California law and Illinois law on the question of whether a forum selection clause should be enforced. We discuss those differences in the following section of this opinion.

---

As described herein, *Smith* upholds forum selection clauses in a "contract entered into freely and voluntarily by parties who have negotiated at arm's length." Appellant Schmidt, as assignee of the creditor claim of Midwest Distributing, Inc. dba Summit Gold, does, indeed, stand in the shoes of the assignor. We note that case law cited herein relating to California's public policy favoring choice of law provisions references "negotiated" agreements. This foundational rationale for upholding choice of law provisions perhaps seems a bit strained in applying the principle to a commercial transaction that may involve a simple placement of an order with a seller that ships a product along with an invoice with a boilerplate choice of law or venue provision. While it may give some pause, the circumstances known to us in the record are such that we are not prepared to express a different rule of construction regarding choice of law language – notwithstanding that there may not be a "negotiation" in the common meaning of the term.

25.

**C.** *Illinois Law As It Pertains to the Enforcement of Forum Selection Clauses*

Under Illinois law, "[t]he party opposing the enforcement of the clause must show that 'trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.' [Citation.] To determine the reasonableness of a forum-selection clause, the court should consider: (1) the law that governs the formation and construction of the contract, (2) the residency of the parties, (3) the place of execution and/or performance of the contract, (4) the location of the parties and their witnesses, (5) the convenience to the parties of any particular location, and (6) whether the clause was equally bargained for." (*Compass Environmental, Inc. v. Polu Kai Services, L.L.C.* (2008) 379 Ill.App.3d 549, 555; 882 N.E.2d 1149, 1156 (*Compass*).)

In California, however, "[t]here is a difference of opinion as to what factors should be considered when deciding whether to uphold a forum selection provision in a contract. One court of appeal has said that a court should consider those factors ordinarily considered when determining a convenient forum: availability of evidence, the burden of trial in one place rather than another, the state's interest in providing a forum to the parties, etc. [*Lifeco Services Corp. v. Superior Court*[, *supra*,] 222 Cal.App.3d 331 … (6th Dist. …)] However, another court of appeal has stated that such general factors of fairness should only be considered in the absence of a contractual choice of forum because to apply those factors would, in essence, require the court to re-write the contract between the parties." (Moore & Thomas, Cal. Civ. Practice Procedure (2023) § 4:21.) And, as noted, the California Supreme Court has indicated " '[m]ere inconvenience or additional expense' " are not generally considered when considering enforcement of a contractual forum selection clause " 'since it may be assumed that the plaintiff received under the contract consideration for these things.' " (*Smith*, *infra*, 17 Cal.3d at 496.)

**D.** ***Remand Is Necessary in Order to Allow the Trial Court to Consider Whether, Under Illinois Law, It Should Exercise, or Decline to Exercise, Jurisdiction Over Claims Involving the Assigned Summit Gold Invoices***

From the trial court's ruling, it appears the court gave little consideration to certain factors required in determining whether to enforce the forum selection provision under Illinois law – including, "the residency of the parties," "the place of execution and/or performance of the contract," "the location of the parties and their witnesses," and "the convenience to the parties of any particular location." (*Compass*, *supra*, 379 Ill.App.3d at p. 555; 882 N.E.2d at p. 1156.) Instead, the court relied primarily on its determination that the parties "reasonably can be held to have contemplated in negotiating their agreement the additional expense and inconvenience attendant on the litigation of their respective claims in a distant forum" and that "[m]ere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things."

It should be noted in defense of the trial court that each of the parties failed to identify the appropriate law to be applied by the trial court in determining whether the enforce the forum selection provision. Nevertheless, "[a] court abuses its discretion if it applies incorrect legal principles, as well as when its decision exceeds the bounds of reason." (*People v. C.S.A.* (2010) 181 Cal.App.4th 773, 778; *Prigmore v. City of Redding* (2012) 211 Cal.App.4th 1322, 1345.) The record on appeal indicates Schmidt provided factual evidence relevant to the required considerations under Illinois law. For example, Schmidt provided information demonstrating that TFMI and Summit Gold both do business in, and have corporate offices in, California; that its "main office for purposes of the claims in the Complaint were in California"; that Schmidt, a California resident doing business out of Tracy, California, worked as Summit Gold's agent in handling the subject transactions; that the subject transactions were negotiated and entered into in California; that the related contracts were performed in Stanislaus County where Summit Gold's products were shipped and used and where some of the payments

for those products were made. Schmidt argued to the court that TFMI and its principals "have no relation to the Illinois courts, and there are no witnesses to the transactions or contract in this case located in Illinois. All facts occurred in California, and all witnesses are located in California."

Schmidt argues the forum selection provision was "clearly in place solely for the benefit of the original creditor." He argues TFMI is "attempt[ing] to circumvent the judicial process due to the difficulty [he] will have in pursuing the action in Illinois, compelling parties to submit to discovery and trial there, and ultimately collecting on any judgment obtained in that jurisdiction," claiming that TFMI "ha[s] no assets in Illinois … and would need to request a sister-state judgment to be enforced here in California." Schmidt contends "[t]he circularity of this litigation process clearly flies in the face of judicial efficiency, and demonstrates the unreasonableness of enforcing the forum selection clause."[15]

On appeal, Schmidt identifies 25 different factors under California law that he contends demonstrate Illinois is an inconvenient forum. We need not recite each of these factors but recognize that many are relevant to the factors to be considered under Illinois law.

Because the trial court applied California law instead of Illinois law in determining whether to enforce the forum selection provision, which we have concluded was error, we believe the interests of justice are best served by remanding the case to the trial court for reconsideration of the issue. Moreover, because the parties themselves did not apply the correct law in arguing for or against the motion to quash and, thus, may not have

---

[15] Given our determination that Schmidt's claims related to the in-state-consulting services and out-of-state management services contract should remain pending in California, Schmidt's contention that judicial efficiency is not well served by enforcement of the forum selection clause as to claims involving the assigned Summit Gold invoices takes on an additional dimension. However, we express no opinion on whether judicial efficiency is a valid consideration under Illinois law in determining whether to enforce the forum selection clause.

submitted evidence they might now consider relevant to the court's determination, we believe the trial court should entertain and consider additional briefing and evidence from each of the parties concerning the application of Illinois law to the question of whether the trial court should exercise, or decline to exercise, jurisdiction over claims involving the assigned Summit Gold invoices.

## DISPOSITION

The judgment is reversed. The cause is remanded to the trial court with instructions (1) to vacate its November 15, 2021, order granting TFMI's motion to quash; (2) to reinstate Schmidt's complaint in its entirety subject to further consideration by the court of whether, under Illinois law, it should exercise jurisdiction over claims involving the assigned Summit Gold invoices based on the forum selection clause contained in the invoices. In doing so, the court shall allow further briefing and evidence from TFMI and Schmidt on the issue; (3) that any subsequent order that issues from the court on the matters that are the subject of this appeal provide that Schmidt's claims involving the alleged contracts for in-state-consulting services and out-of-state management services may remain pending in California; and (4) that, in the event the court declines jurisdiction over claims involving the assigned Summit Gold invoices, it shall stay, and not dismiss, the claims until such time as a final disposition of the case is entered.

In the interests of justice, the parties shall each bear their own costs on appeal.

POOCHIGIAN, Acting P. J.

WE CONCUR:

FRANSON, J.

PEÑA, J.

29.