Filed 2/13/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| EDWARD DIAZ et al., | B339037 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 23NWCV01867) |
| v. | |
| THOR MOTOR COACH, Inc., et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County. Olivia Rosales, Judge. Reversed.

Law Firm of Lawrence Hutchens, Lawrence J. Hutchens; The Law Offices of Shay Dinata-Hanson, and Shay Dinata-Hanson for Plaintiffs and Appellants.

Bravo Law Group, Dolores E. Gonzales, James R. Robertson; Horvitz & Levy, Shane H. McKenzie, and Lisa Perrochet for Defendants and Respondents.

_____

# INTRODUCTION

Plaintiffs Edward Diaz and Linda Diaz appeal from the trial court's order staying their action under the Song-Beverly Consumer Warranty Act (Act) (Civ. Code, § 1790 et seq.), after the court enforced a forum selection clause contained in defendant Thor Motor Coach, Inc.'s (Thor) warranties that were issued when the Diazes bought one of the company's motorhomes from a California dealer. The forum selection clause designated Indiana as the exclusive forum for any disputes relating to Thor's express and implied warranties. In seeking to enforce the forum selection clause, Thor offered to stipulate that the Act would apply to the Diazes' claims "as pled in their Complaint" and to not oppose an Indiana court applying the Act to the Diazes' claims. Based on Thor's offer, the trial court granted the motion to stay the Diazes' action.

We agree with two recent published decisions—*Lathrop v. Thor Motor Coach, Inc.* (2024) 105 Cal.App.5th 808, review granted January 15, 2025, S287893 (*Lathrop*) and *Hardy v. Forest River, Inc.* (2025) 108 Cal.App.5th 450, review granted April 30, 2025, S289309 (*Hardy*)—that held forum selection clauses like the one included in Thor's warranties are unenforceable, even when they are accompanied by the type of stipulation Thor offered to make in this case, because such clauses are part of an illegal scheme of issuing warranties that violate the Act's unwaivable statutory rights. We conclude the trial court erred when it enforced Thor's forum selection clause. Accordingly, we reverse the trial court's order granting Thor's motion to stay.

## BACKGROUND

In 2021, the Diazes purchased a Thor motorhome from Giant RV for more than $400,000. The Diazes financed the purchase through U.S. Bank.

When they purchased the motorhome, the Diazes signed a series of forms that were drafted by Thor, including a two-page document entitled, "Thor Motor Coach Product Warranty Registration Form" (Registration Form). By signing the Registration Form, the Diazes acknowledged that: (1) they "received, read and agreed to the terms and conditions of the Thor Motor Coach Limited Warranty and the Thor Motor Coach Structural Limited Warranty"; (2) they understood and agreed "to the forum selection clause and choice of law clause set forth in the Thor Motor Coach Limited Warranty and the Thor Motor Coach Structural Limited Warranty"; (3) that any actions related to their motorhome would be decided by a judge rather than a jury; and (4) that "exclusive jurisdiction for deciding legal disputes relating to alleged breach of warranty or representations of any nature rest[ed] in the courts within the state of manufacture, which is Indiana." (Bolding and capitalization removed.)

The limited warranties were included in a separate document entitled, "Warranty Guide," which the Diazes were not required to sign. The Warranty Guide included a forum selection clause, designating Indiana—where Thor manufactured the motorhome—as the exclusive jurisdiction for litigation. The Warranty Guide also included a choice-of-law provision designating Indiana law as the law governing any disputes concerning the motorhome, and precluding application of any

3

conflict-of-law rule that would result in the application of another jurisdiction's laws.

In 2023, the Diazes sued Thor, Giant RV, and U.S. Bank (collectively, Thor), asserting a single cause of action under the Act. The Diazes alleged that Giant RV sold the motorhome with unspecified defects, and that Thor and its authorized repair facilities failed to repair those defects during the warranty period. The Diazes further alleged that Giant RV and Thor failed to refund their purchase of the motorhome or provide them a replacement motorhome.

Thor moved to stay the Diazes' action, arguing the forum selection clause included in the Registration Form and Warranty Guide required the Diazes to litigate their claims in Indiana. As part of its motion, Thor disclaimed the choice-of-law and jury-waiver clauses that were included in the Registration Form and Warranty Guide.

Thor's attorney submitted a declaration in support of the motion to stay, in which the attorney stated, "By this motion, Defendants THOR, GIANT RV and US BANK, stipulate (1) that the Song-Beverly Consumer Warranty Act will apply to Plaintiffs' claims as [pleaded] in their Complaint; (2) that Defendants THOR, GIANT RV and US BANK *will not oppose* a request that the Indiana court utilize the Song-Beverly Consumer Warranty Act to adjudicate those allegations if permitted to go forward; and (3) that Plaintiffs' right to a jury trial pursuant to California [Code of Civil Procedure] [section] 631[, subdivision] (a) will apply to Plaintiffs' warranty claims pursued in an action against it in Indiana. Further, should Plaintiffs wish, Defendants THOR, GIANT RV and US BANK will enter into a written stipulation to that effect." (Emphasis added.)

4

Thor also asserted in its motion to stay that, "[i]n the unlikely event the Indiana court refuses to honor the stipulation of THOR, GIANT RV and US BANK that plaintiffs' claims against them are governed by Song-Beverly and/or plaintiffs' right to a jury trial, plaintiffs can dismiss their complaint in Indiana and this court can dissolve the stay of this case and reassert jurisdiction over the dispute." Thor stated that it "recognizes the California legislature made, with certain exceptions, a buyer's rights under Song-Beverly essentially unwaivable. *See*, California [Civil Code] [sections] 1751 and 1790.1. Similarly, [Thor] does not dispute that pursuant to California [Code of Civil Procedure] [section] 631[, subdivision] (a), absent certain exceptions, that the 'right to a trial by jury as declared by Section 16 of Article I of the California Constitution shall be preserved [to] the parties inviolate.' "

The Diazes opposed Thor's motion. They argued that the forum selection clause violated California's public policy under the Act's anti-waiver provision. The Diazes also argued that Thor could not waive application of the jury-waiver and choice-of-law clauses to make the forum selection clause enforceable because all the clauses must be read together. According to the Diazes, enforcement of the forum selection clause would be unreasonable because the choice-of-law clause violated the Act's anti-waiver provision and California's public policy. The Diazes further argued that Thor's warranty provisions, including the forum selection clause, were unconscionable.

The Diazes rejected Thor's offer to stipulate not to oppose application of the Diazes' California-specific rights in an Indiana forum. They claimed that "[b]y drafting and entering into warranty agreements that [Thor] know[s] contain illegal

5

provisions under California law, [Thor is] acting in bad faith and conducting an illegal scheme."

The trial court granted Thor's motion to stay. The court ordered Thor to sign a stipulation "to not oppose" the application of California law in Indiana courts. The court further ordered that, should the Indiana courts decline to apply the Diazes' rights under the Act, the Diazes could move to lift the trial court's stay.

The Diazes appealed.

## DISCUSSION

California favors forum selection clauses where they are entered into freely and voluntarily and their enforcement would not be unreasonable. (*Rheinhart v. Nissan North America, Inc.* (2023) 92 Cal.App.5th 1016, 1031.) The party opposing enforcement of a forum selection clause ordinarily bears a substantial burden to prove why it should not be enforced. (*Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 147 (*Verdugo*).)

That burden flips, however, if the party opposing a forum selection clause can make an initial showing that the clause's enforcement would violate public policy. (See *EpicentRx, Inc. v. Superior Court* (2025) 18 Cal.5th 58, 81–82 (*EpicentRX*); *Verdugo*, *supra*, 237 Cal.App.4th at p. 147.) Once the opposing party makes that initial showing, the burden shifts to "the party seeking to enforce the forum selection clause . . . to show litigating the claims in the contractually designated forum 'will not diminish in any way the substantive rights afforded . . . under California law.' " (*Verdugo*, at p. 147.)

We review an order enforcing a forum selection clause for abuse of discretion. (*Lathrop*, *supra*, 105 Cal.App.5th at p. 816.)

6

We review de novo whether the trial court applied the correct law in exercising its discretion.  (*Ibid*.)

Three published decisions have addressed whether forum selection clauses like the one included in Thor's warranties in this case can be enforced when a manufacturer offers to stipulate to not oppose application of the Act by courts in other states. (See *Lathrop*, *supra*, 105 Cal.App.5th 818; *Hardy*, *supra*, 108 Cal.App.5th 450; *Kim v. Airstream, Inc.* (2025) 113 Cal.App.5th 201 (*Kim*).)  While all three courts held that such a stipulation offer is insufficient to ensure that an out-of-state court will enforce a consumer's unwaivable rights under the Act, the courts took different approaches in reaching that conclusion.

In *Lathrop*, the plaintiffs sued Thor in California for violating the Act.  (*Lathrop*, *supra*, 105 Cal.App.5th at p. 814.) Thor moved to stay the case, relying on essentially the same warranty provisions and a similar offer to stipulate at issue in this case.  (See *id*. at pp. 813–814.)  The trial court granted Thor's motion, finding that enforcement of Thor's forum selection clause "was not 'unreasonable given the circumstances of this case.' " (*Id*. at p. 815.)

Our colleagues in Division Seven reversed.  First, the court found that the trial court erred in failing to shift to Thor the burden to prove that the forum selection clause was reasonable because the plaintiffs' unwaivable statutory rights were implicated.  (*Lathrop*, *supra*, 105 Cal.App.5th at pp. 816–818.)

Next, Division Seven concluded that Thor failed to show that litigating the plaintiffs' claims in Indiana would not substantially diminish their unwaivable rights under the Act. (*Lathrop*, *supra*, 105 Cal.App.5th at p. 818.)  Because Thor's

7

warranties contained an Indiana forum selection clause *and* an Indiana choice of law provision, the court explained, "an Indiana court could enforce several terms of the Limited Warranty that would be unenforceable under the Song-Beverly Act." (*Id.* at p. 818.) "Given the consumer-protection deficit between the terms of the Limited Warranty and the Song-Beverly Act, Indiana did not provide the [plaintiffs] the same or greater rights than California." (*Id.* at p. 819.)

Division Seven also held that Thor's stipulation offer was insufficient to ensure that an Indiana court would provide the plaintiffs the same or greater rights than a California court. (*Lathrop, supra*, 105 Cal.App.5th at pp. 820–827.) The court treated Thor's offer as a request to sever the unconscionable or unenforceable terms of the company's warranties and enforce the remaining terms. (*Id.* at p. 820.) In doing so, the court looked to the severance framework developed by the Supreme Court in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*) and *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478 (*Ramirez*). (*Lathrop*, at p. 820.)

Applying that framework, Division Seven assumed without deciding that any unenforceable terms in Thor's warranties could be cured by severance. (*Lathrop, supra*, 105 Cal.App.5th at p. 820.) Nevertheless, it concluded that severance was not appropriate because doing so "would not further the interests of justice." (*Ibid.*; see also *Ramirez, supra*, 16 Cal.5th at p. 516; *Armendariz, supra*, 24 Cal.4th at p. 124.)

Specifically, the court explained, severance would disfavor less sophisticated customers, who might not be aware that they can challenge Thor's unconscionable warranty terms in

8

California courts.  (*Lathrop, supra*, 105 Cal.App.5th at pp. 820–821.)  While severance would protect "the rights of the plaintiffs who are savvy enough to obtain experienced legal representation, file in California, and argue the forum selection clause implicates their unwaivable statutory rights," it would allow Thor to apply its unenforceable warranty provisions against less sophisticated customers who either believe they may only sue the company in Indiana or are "deterred from pursuing their claims at all."  (*Id.* at p. 821.)  Severance would also incentivize Thor "to continue to include admittedly unenforceable provisions in its warranties and . . . deter Thor from revising its warranty to comply with California law."  (*Ibid.*)

Division Seven rejected Thor's assertion that any conflicts between its warranties and the Act are remedied by the company's inclusion in its warranties of disclaimer language required by the federal Magnuson-Moss Warranty Act, which states:  " 'This limited warranty gives you specific legal rights.  You may also have other rights, which vary from state to state and province to province.' "  (*Lathrop, supra*, 105 Cal.App.5th at p. 823.)  The court found this advisement fails to adequately advise customers that Thor's warranties may restrict California-specific statutory rights.  (*Ibid.*)

Finally, Division Seven found that even if Thor's offer to stipulate did not violate public policy, its wording was insufficient to ensure that an Indiana court would provide the plaintiffs the same or greater rights that they would enjoy in a California court. (*Lathrop, supra*, 105 Cal.App.5th at pp. 824–826.)  For instance, the stipulation's caveat that the " 'substantive provisions' " of the Act would apply to the plaintiffs' " 'currently enumerated claims' " could allow for potential disputes in an

9

Indiana court over which rights are procedural and which are substantive and whether the plaintiffs would be permitted to amend their pleadings.  (*Id*. at pp. 814, 824–825.)  In addition, Thor's offer to "not oppose," instead of an offer to join, the plaintiffs' request that an Indiana court apply the Act would not guarantee that an Indiana court would in fact apply the Act.  (*Id*. at p. 826.)

In *Hardy*, our colleagues in Division Two agreed with *Lathrop* and reversed the trial court's order granting a different motorhome manufacturer's motion to stay based on a forum selection clause included in its warranties.  (*Hardy*, *supra*, 108 Cal.App.5th at pp. 457–463.)  First, the court in *Hardy* found that the trial court applied the wrong legal standard in determining whether the manufacturer's forum selection clause was enforceable.  (*Id*. at pp. 457–458.)

Next, Division Two treated the manufacturer's offer to stipulate to not enforce the choice of law and other illegal provisions in its warranties as a request to sever those provisions.  (*Hardy*, *supra*, 108 Cal.App.5th at p. 458.)  The court found that the forum selection clause was "at least somewhat procedurally unconscionable" as a contract of adhesion and substantively unconscionable because, when combined with the warranties' choice of law provision, it "purported to foreclose unwaivable rights."  (*Id*. at p. 457, fn. 4.)

The *Hardy* court also held that the manufacturer's offer to stipulate would not cure any unconscionability because "the time to look at a contract for unconscionability is as of the date it is written."  (*Hardy*, *supra*, 108 Cal.App.5th at p. 458, citing *Ramirez*, *supra*, 16 Cal.5th at p. 503.)  Thus, the court explained, the manufacturer's offer to stipulate should be treated as an offer

10

to modify the parties' contract, an offer that the plaintiffs never accepted. (*Hardy*, at p. 459.) In any event, even if the unconscionability could be cured by severance, the court reasoned that doing so would not further the interests of justice because doing so would " 'condone an illegal scheme.' " (*Ibid.*)

In *Kim,* our colleagues in Division One affirmed the trial court's order severing a choice of law provision from a motorhome manufacturer's warranties, but it reversed the court's order granting the manufacturer's motion to stay. (*Kim*, *supra*, 113 Cal.App.5th at pp. 211–221.) The court concluded that the manufacturer's proposed stipulation to apply the Act in an Ohio court was insufficient to show the plaintiff's unwaivable statutory rights would not be diminished. (*Id.* at pp. 221–222.) The court remanded the case to allow the manufacturer the opportunity to meet its burden to show those rights would not be diminished in an Ohio court based on that state's conflict of law principles. (*Id.* at pp. 222–223.)

As part of its severance analysis, Division One assumed that the manufacturer's choice of law provision was unconscionable. (*Kim*, *supra*, 113 Cal.App.5th at p. 213.) The court concluded that the central purpose of the manufacturer's warranties was not " 'tainted with illegality' " because the manufacturer intended for its warranties to establish express warranty obligations. (*Id.* at pp. 213–214.) The court also rejected the plaintiff's argument that the manufacturer's warranties were part of a bad faith and illegal scheme to trick California customers into waiving their unwaivable rights under the Act. (*Id.* at p. 214.) According to Division One, issuing a uniform set of warranties on a nationwide basis that must be interpreted under a single state's laws provides the manufacturer

11

with legitimate "efficiency and predictability benefits." (*Id.* at p. 215.)

Division One concluded that any unconscionability in the manufacturer's warranties could be cured by severing the choice of law provision because doing so would not require any further revisions. (*Kim, supra,* 113 Cal.App.5th at p. 215.) The court also reasoned that severance would further the interests of justice because the forum selection clause was clear and understandable, and it would be "unfair to allow [the plaintiff] to avoid that obligation solely because the Legislature has declared *illegal* a *different* obligation, which the court has struck." (*Id.* at p. 216.)

Division One explained why it declined to follow *Lathrop* and *Hardy*. (*Kim, supra,* 113 Cal.App.5th at pp. 217–220.) The court disagreed with those decisions' "application [of] and broad reliance on the *Armendariz/Ramirez* deterrence factor." (*Id.* at p. 220.) The court also explained that while the manufacturers in *Lathrop* and *Hardy* relied on their proposed stipulations as the sole basis for severing the choice of law provisions, the trial court in *Kim* severed the choice of law provision under section 1790.1 of the Act, which renders such provisions unenforceable and void. (*Kim,* at p. 220.)

Although it affirmed the trial court's decision to sever the choice of law provision, Division One reversed the trial court's order granting the motion to stay, concluding that the manufacturer's proposed stipulation was insufficient to ensure the plaintiff's rights under the Act would not be diminished in an Ohio court. (*Kim, supra,* 113 Cal.App.5th at pp. 220–221.) The court explained that the wording of the proposed stipulation and other possible similarly worded stipulations could result in

"unpredictability in how the parties will interpret and react" to them. (*Id*. at p. 221.) Nevertheless, the court remanded the matter to allow the manufacturer to show that under Ohio conflict of law principles, litigating in that state's courts would not diminish the plaintiff's unwaivable rights under the Act. (*Id*. at pp. 221–223.)

We agree with the reasoning in *Lathrop* and *Hardy* and apply it here. On its face, Thor's warranty violates public policy because, among other reasons, its choice of law provision precludes application of California law by an Indiana court and would result in waiver of the Diazes' unwaivable rights under the Act. (See Civ. Code, § 1790.1.) Thor's offer to stipulate to not oppose application of the Act in an Indiana court is essentially a request to sever the choice of law provision to allow enforcement of the warranty's forum selection clause. (See *Lathrop*, *supra*, 105 Cal.App.5th at p. 820.)

It is well-settled that we must evaluate a contract for unconscionability at the time it was written, and we may not rewrite a contract to avoid unconscionability embedded in the contract's unambiguous terms. (*Ramirez*, *supra*, 16 Cal.5th at pp. 503, 512.) Although Thor is now willing to waive application of its warranty's choice of law provision and allow application of the Act in an Indiana court, that does not change the fact that, at the time the Diazes purchased their motorhome and signed the Registration Form, Thor's warranty violated public policy and, as a result, was substantively unconscionable. Thor's willingness to waive application of its choice of law provision is, in essence, " 'an offer to modify the contract; an offer that was never accepted.' " (*Armendariz*, *supra*, 24 Cal.4th at p. 125.) As our Supreme Court explained, " 'No existing rule of contract law permits a party to

13

resuscitate a legally defective contract merely by offering to change it.' " (*Ibid.*)

Even if the unconscionability of Thor's warranty could be cured by severing its illegal terms, severance of those terms would not further the interests of justice. (See *Ramirez*, *supra*, 16 Cal.5th at p. 516.) Although severance may protect customers who are savvy enough to challenge Thor's illegal warranty terms in a California court, it would do nothing to protect other California customers. As the court in *Lathrop* explained, those other customers, "compelled by the forum selection clause, may file suit in Indiana and only later discover that Indiana's lemon law does not cover motorhomes and that they have given up unwaivable California statutory rights. Still others may be deterred from pursuing their claims at all." (*Lathrop*, *supra*, 105 Cal.App.5th at p. 821.) Severing the warranty's illegal terms would also incentivize Thor to continue to include admittedly unenforceable terms in its warranty. (*Ibid.*)

Thor claims that the interests of justice would be furthered by severing its warranty's illegal terms. According to Thor, it would be too tedious for the company to issue a California-compliant warranty because it sells motorhomes to dealers throughout the country and cannot predict in which state any specific vehicle will be sold. But that inconvenience does not relieve Thor of its obligation to comply with California's consumer-protection laws if it wishes to do business in this state, especially when it includes in its nationwide policies terms that the California Legislature has declared contrary to public policy, unenforceable, and void. (See Civ. Code, § 1790.1.)

Thor argues that California courts have long held that "a party's unilateral stipulation to apply California law in the

14

agreed-to-forum is sufficient to meet that party's burden to establish that enforcement of the forum clause will not diminish the opponent's unwaivable California rights." To be sure, the court in *Verdugo* noted that the defendant "could have eliminated any doubt about which law would apply . . . by stipulating to have the [foreign] courts apply California law." (*Verdugo, supra*, 237 Cal.App.4th at p. 145.) But the defendant there never made such a stipulation. (*Ibid.*) *Verdugo*'s discussion of a possible stipulation is, therefore, "clearly dicta, as the court did not reach the issue of whether an actual stipulation made the forum selection clause enforceable." (*Hardy, supra*, 108 Cal.App.5th at p. 461.)

The two other cases cited by Thor simply quote or describe *Verdugo*'s discussion about the effect of a possible stipulation. Neither of them involves an actual stipulation. (See *Rheinhart v. Nissan North America, Inc., supra*, 92 Cal.App.5th at p. 1033; *Handoush v. Lease Finance Group, LLC* (2019) 41 Cal.App.5th 729, 736, overruled on other grounds in *EpicentRx, supra*, 18 Cal.5th at p. 84, fn. 7.) Cases are not authority for issues not presented by their own particular facts. (*Hardy, supra*, 108 Cal.App.5th at p. 462.) At any rate, none of the cases cited by Thor address the public policy implications of enforcing a defendant's stipulation to apply California law in another state's courts. As we already explained, we find persuasive *Lathrop*'s and *Hardy*'s rationale for not enforcing such a stipulation in cases like the one before us.

Thor suggests that contracts between consumers and companies that sell or manufacture goods are never unconscionable because consumers, especially those in the market for expensive or luxury goods like motorhomes, can

15

always walk away from potential deals and take their business elsewhere if they are dissatisfied with the terms of a company's contracts. California courts have, however, regularly applied the unconscionability doctrine to consumer contracts. (See, e.g., *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 158–163, abrogated on federal preemption grounds by *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333; *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899; *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945.) Some courts have refused to enforce provisions in consumer contracts because they are oppressive to the consumer or violate public policy. (See, e.g., *McGill*, at pp. 961–967 [invalidating a provision in a consumer contract that contravenes public policy]; *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 67–75 [refusing to enforce as unconscionable an arbitration provision in a consumer contract].)

Presumably, the consumers in these cases could have taken their business to other companies if they were dissatisfied with the terms of the contracts that they entered, as Thor urges consumers shopping for motorhomes to do if they are unsatisfied with a particular manufacturer's warranty. While a consumer's ability to do so may decrease the degree of unconscionable oppression, the existence of market alternatives does not necessarily negate such oppression or otherwise preclude a finding of procedural unconscionability. (See *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1100.)

Moreover, as case law demonstrates, California consumers may not have many, if any, meaningful choices to purchase motorhomes free of the illegal warranty provisions at issue here. For instance, Airstream and Forest River, the manufacturers in *Kim* and *Hardy*, include in their warranties choice of law, forum

16

selection, and jury waiver provisions similar to those used by Thor in this case.  (See *Kim*, *supra*, 113 Cal.App.5th at pp. 206–209 [Airstream]; *Hardy*, *supra*, 108 Cal.App.5th at pp. 454–456 [Forest River].)  To the extent Thor claims that consumers who want the right to litigate in California can purchase motorhomes from California manufacturers, Thor submitted no evidence that such manufacturers exist or that any other manufacturers issue warranties that are free of the illegal terms at issue here.

In short, for the same reasons expressed in *Lathrop* and *Hardy*, we conclude that the trial court erred when it enforced Thor's forum selection clause and granted the company's motion to stay the Diazes' action.

## DISPOSITION

We grant Thor's request for judicial notice.  We reverse the order granting Thor's motion to stay and direct the trial court to enter a new order denying that motion.  The Diazes shall recover their costs on appeal.


VIRAMONTES, Acting P. J.


I CONCUR:


UZCATEGUI, J.*

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**WILEY, J., Dissenting.**

If you go out shopping for a $400,000 luxury item, many vendors would like to meet you.  They will describe how their deluxe product beats the competition.  These sellers have *no oppressive power* over you unless something unusual is happening.  Normally, if you decide to visit their site, you can spend as much time as you like and then, if you are not pleased with what you see, you just leave.

Nor do you have power over the sellers.  Neither side is weaker or stronger, because both sides can just walk away.  Opting out is powerful leverage.

Applying the doctrine of unconscionability to this ordinary shopping situation is a bad use of a good law.  This is why I disagree with *Lathrop v. Thor Motor Coach, Inc.* (2024) 105 Cal.App.5th 808, review granted Jan. 15, 2025, S287893 (*Lathrop*).  (See also *Hardy v. Forest River, Inc.* (2025) 108 Cal.App.5th 450, review granted Apr. 30, 2025, S289309 (*Hardy*).)

Properly understood, unconscionability is about someone using oppressive power over another to force them into an unfair deal.  A classic case arose when the Richmond, a whaling ship, ran aground in arctic waters 5,000 miles from the nearest port.  Winter was near:  sea ice soon would crush the ship and destroy its cargo, which was a full load of valuable oil.  The only three ships in the neighborhood rescued the crew.  These other whaling ships did *not* have full holds.  With the assent of the Richmond's master, the other three captains held an auction and bought the Richmond's oil for cents on the dollar.  Once back home, however, the owner of the Richmond sued to void the so-called auction and

to recover the true market value of the oil.  The Supreme Court of the United States agreed this "auction" contract was unconscionable:  "The contrivance of an auction sale, under such circumstances, where the master of the Richmond was hopeless, helpless, and passive—where there was no market, no money, no competition—where one party had absolute power, and the other no choice but submission—where the vendor must take what is offered or get nothing—is a transaction which has no characteristic of a valid contract."  (*Post v. Jones* (1857) 60 U.S. 150, 159.)

One hundred and seventy years later, the unconscionability doctrine is alive and well.  Wise courts continue to police its boundaries, however, to ensure the exception does not swallow the rule, which is that we enforce contracts as written.  (See *Fuentes v. Empire Nissan, Inc.* (February 2, 2026) __ Cal. 5th __ [2026 WL 265574 at pp. *3–6] [reaffirming that the unconscionability doctrine imposes a two-prong test and rejecting the suggestion that tiny contract font alone satisfies both prongs].)

For two fundamental reasons, the trial court was right largely to uphold this contract.

*First, no unfair process.*  Thor had no power to force the Diazes into a deal.  Thor was like Hertz when you want to rent a car.  Buyers are free to choose which company they want.  True, Thor, like Hertz, is a corporation with legions of lawyers.  And on the other side are household consumers like you and me and the Diazes, who have no contract lawyers to tag along to the dealership.  But that does not matter, any more than it matters at the airport when you are renting a car.  Hertz is a large corporation with many attorneys, but *it has no power to force us*

*to do anything.*  If we do not like the deal Hertz is offering, we go to Avis, Enterprise, Alamo, National, Sixt, Thrifty, or to some other option.  That is consumer sovereignty.

This power of choice is one reason consumers prefer a competitive market.  Firms strive to build and maintain an excellent reputation with consumers, especially when online platforms give consumers easy options for venting discontent about anything, including forum clauses.

Thor sold in a competitive market.  The Diazes' attorney at oral argument referred to a company called Forest River as "one of Thor's many competitors."  This was not some slip of the tongue or an inadvertent concession.  It was simple reality, for this record contains nothing to suggest the recreational vehicle market is other than highly competitive.  The Diazes have not asked us to *assume* Thor is a monopolist, and for good reason, for there is no legal or logical basis for that assumption here.

At oral argument, the attorney for the Diazes claimed *all* recreational vehicle manufacturers demand foreign forum selection clauses.  The lawyer for Thor correctly criticized this oral appellate factual claim.  No record evidence addresses this point.  Thor's lawyer claimed the factual assertion was incorrect, and that California buyers who cared about a local forum could buy a recreational vehicle made in California.  As the side attacking the contract, the Diazes had the burden of producing evidence to sustain their attack.  They offered *no* evidence, however, of any kind.  Given their omission, appellate judges certainly cannot make findings on disputed factual claims the trial court was never given an opportunity to address.  If this evidentiary link was vital to the Diazes' attack, they failed to supply the needed proof.

In a related note, it would be a logical fallacy to reason that, because *reported* cases involve foreign forum clauses, *all* sellers in this market use them. Reported cases about foreign forum selection clauses are not a random sample. They consist only of cases where a plaintiff sued about a foreign forum clause. If judges are to learn how common these clauses are in the real world, we must await a case where a trial court fact finder determined the question on the basis of a fair evidentiary contest.

Returning to the issue of procedural unconscionability, Thor did nothing untoward to push the Diazes into the deal at the point of sale. The Diazes offered no evidence that Thor coerced them to sign, or gave them only limited time, or anything like that. (Cf. *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 127 [employer pressured employee to sign].)

The fact that the contract here was a form contract does not matter. Form contracts are the norm for every consumer purchase nowadays. The negotiated consumer contract is the rare exception, and thank heavens, because it is time-consuming and expensive to negotiate a contract and hire a contract lawyer. Ordinarily, consumers are more interested in efficient one-click purchasing than in increased transaction costs.

Form contracts are sometimes disparagingly called contracts of *adhesion*, but they could just as well be called contracts of *convenience*. Imagine if rental car companies like Hertz did not have a form contract for you to sign: every time you wanted a rental car, you had to negotiate and draft a comprehensive deal from scratch. Then every car rental counter would have had not just a clerk but someone trained—and paid enough—to bind the car company to whatever deal was being

4

drafted on the spot. That would be slow and expensive. Consumers prefer fast service and a low price.

The Diazes' visit to Thor was not similar in any way to the employer-employee context, where employers usually hold all the cards. (See, e.g., *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 494.) Most of us need a job. No one *needs* a $400,000 luxury item.

*Second, no unfair result through severance.* In practical effect, the trial court severed the choice-of-law and jury waiver clauses from Thor's contract. (See *Lathrop, supra,* 105 Cal.App.5th at p. 820 [manufacturer's offer to stipulate was essentially a request to sever].) I disagree with *Lathrop*'s refusal to sever contractual terms that were part of Thor's overall warranty. I agree with the *Kim* opinion's treatment of this issue. (See *Kim v. Airstream, Inc.* (2025) 113 Cal.App.5th 201, 213–217.) The central purpose of the warranty was to warrant Thor's recreational vehicle. This central purpose was legitimate. It was not "tainted with illegality." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 124 (*Armendariz*).)

Thor waived the parts of the deal it perceived as offensive to the Song-Beverly Act: the jury clause and the choice of law provision. And the Song-Beverly Act does not say that California consumers have a mandatory right to a California venue. An Indiana forum is less convenient, but that is not the test. (*EpicentRx, Inc. v. Superior Court* (2025) 18 Cal.5th 58, 73 (*EpicentRx*) [mere inconvenience or additional expense is not the test because the plaintiff presumably received consideration for these things].)

To label Thor's contract an illegal "scheme" is an unwarranted pejorative. (See *Lathrop, supra*, 105 Cal.App.5th at

pp. 821–822 ["scheme"].)  Thor makes its recreational vehicles in Indiana and sells them across the U.S. and Canada.  For this reason it presents its contract materials in English and in French.  Thor economizes its far-flung distribution operation by centering litigation in its home state.  Thor thus can make its product more affordable.  Thor's drive to be efficient is a "business reality."  (*Armendariz, supra*, 24 Cal.4th at p. 117.)  This business reality explains Thor's practice as legitimate.  (See also *EpicentRx, supra*, 18 Cal. 5th at pp. 74–77 [legitimate and indeed compelling reasons can support enforcing forum selection clauses].)

We want producers continually to search for ways to cut costs while improving efficiency and quality.  This unrelenting incentive for producers to improve is a central reason we embrace competitive markets as a commercial ideal.  Vilifying Thor's effort to achieve efficiency gains is unjustified.

So too is it wrong to speculate that "other California consumers, compelled by the forum selection clause, may file suit in Indiana and only later discover that Indiana's lemon law does not cover recreational vehicles and that they have given up unwaivable California statutory rights.  Still others may be deterred from pursuing their claims at all."  (*Lathrop, supra*, 105 Cal.App.5th at p. 821.)

To suppose that unsophisticated consumers lacking "savvy" (*Lathrop, supra*, 105 Cal.App.5th at p. 821) who have purchased a $400,000 luxury item have read Thor's documents *and therefore credulously sued in Indiana* is insupportable.  Every experienced California civil trial judge knows California has no shortage of knowledgeable and aggressive lemon law attorneys.  Those in doubt can search online for "California lemon law lawyer" and

decide for themselves how likely it is that unhappy buyers of a $400,000 luxury item would fall prey to ignorance. The notion that language in Thor's documents would deter any Californian from asserting rights is unrealistic. Lemon law firms are standing by to take your call. Every Californian can summon help in a snap.

I likewise reject the idea we should reverse the ordinary burden of proof. The general rule is that courts enforce forum selection clauses absent a showing that this enforcement would be unfair or unreasonable. But the *Lathrop* opinion put the burden on Thor to prove the clause was reasonable. That is unjustifiably contrary to the usual rule. The one attacking a contract provision typically bears the burden. And it is error to cite *EpicentRx, supra,* 18 Cal.5th at pp. 81–82 as approving a burden flip, for our Supreme Court invalidated one burden-flipping case from the Court of Appeal and left the others unexamined. (See *id.* at p. 84, fn. 7.)

Someone is paying for Song-Beverly verdicts, settlements, attorney fee awards, and litigation expenses. The belief these costs stay entirely with producers and are never passed on to consumers is unexamined. The law of unintended consequences is relentless. By ruling for a comparatively few lemon law plaintiffs and their attorneys, the consequence may be to raise the cost of recreational vehicles to Californians generally. That would be paradoxical and unfortunate.

WILEY, J.

7